## PEOPLE *v.* DUDLEY.

1. CRIMINAL LAW—PROBATION—SENTENCE.
   After respondent had pleaded guilty to a criminal charge and had been placed on probation by the court, under Act No. 124, Pub. Acts 1909, he was taken into custody and put in jail by the probation officer, for a violation of the conditions of his parole. The court deferred sentence, on the advice of the officer, who was of the opinion that if respondent was permitted to remain in jail a few days, he would keep the conditions of the probation thereafter. Having been released, he again broke the conditions and was rearrested and sentenced to imprisonment. *Held*, that the sentence was valid, and that the court had not exhausted its authority by reason of the action of the officer, taking the respondent into custody and releasing him on the former occasion. Act No. 91, Pub. Acts 1903.

2. SAME.
   The officer had no power to revoke the probation.

3. SAME—CONSTITUTIONAL LAW—BENEFIT OF COUNSEL.
   No constitutional right to the aid or advice of counsel is infringed by the statute which contains no provision granting respondent such right.

4. SAME—JURY TRIAL—CONSTITUTIONAL LAW.
   On being taken into custody for violation of his parole respond-

ent was not entitled to a jury trial to establish the question whether he had violated its conditions, or to be confronted with witnesses as in criminal trials, and the acts are valid although they make no provision for hearing and trial.

5. SAME.

The violation of the terms of probation is not necessarily a crime and is not treated by the law as a crime, but rather as a breach of contract; when the person convicted is granted rights thereunder he agrees to the terms and understands that for certain misconduct his probation will be terminated, nor is the proceeding for carrying out this feature of the law in any sense a criminal prosecution.

6. SAME—DUE PROCESS OF LAW.

Respondent was not deprived of liberty without due process of law by being summarily rearrested and sentenced.

Case-made from the superior court of Grand Rapids; Stuart, J. Submitted November 14, 1912. (Docket No. 134.) Decided December 17, 1912.

George Dudley was convicted of obtaining money under false pretenses. Affirmed.

*Roger I. Wykes,* Attorney General (*Samuel D. Pepper,* Assistant Attorney General, *Earl F. Phelps,* Prosecuting Attorney, and *Louis T. Herman,* Assistant Prosecuting Attorney, of counsel), for the people.

*Lombard, Hext & Washburn,* for respondent.

STONE, J. The respondent having been duly arrested upon a warrant charging him with having fraudulently obtained $50 by false pretenses in the city of Grand Rapids, and having waived an examination upon said charge, and having been duly bound over to the superior court of Grand Rapids, and having on March 8, 1910, been duly arraigned in the superior court upon an information charging him with said offense, and having pleaded guilty thereto on March 19, 1910, he was brought before the court, when an order was duly entered by the court in said cause that "sentence be deferred from day

to day, and from term to term, as the court may see fit,"
and the respondent was permitted to enter into his
personal recognizance conditioned to appear before the
court at the then next term thereof, and from day to day,
and term to term, and to do and receive what should by
the court and by the probation officer be then and there
enjoined upon him. He was placed in the custody of the
probation officer, which officer was then and there in-
structed by the court to take said respondent into custody
at any time thereafter that the said respondent violat-
ed the conditions of his probation, and the said officer
was instructed to report to the court the fact of the
respondent's commitment, and the said officer then and
there informed the respondent of the conditions accom-
panying, and incident to; his freedom, among which
he was instructed to report every Monday evening to
said probation officer at his office in the courthouse,
and was given a card containing certain written and
printed instructions as to the conditions of his parole,
among which conditions was one requiring him to re-
frain from the use of intoxicating liquors, or from
entering any place where intoxicating liquors were sold.

Respondent secured employment, and for a time re-
ported satisfactorily to said probation officer, but after a
while that officer learned that respondent had been visit-
ing saloons, and drinking intoxicating liquors, and was
guilty of other improper and unlawful conduct; and there-
upon said officer, feeling that respondent had violated his
parole, took him into custody, and placed him in jail on
or about the 13th day of April, 1911, without any further
order or direction whatever from the court. The proba-
tion officer reported the matter to the court very soon
thereafter, and also reported that respondent and his fam-
ily felt very sorry for what he had done, and said officer
also reported that in his opinion, if respondent was kept
in jail a few days, and then given another chance, he
would perhaps be able to keep the conditions of his parole
in the future, and the officer was informed by the court

that he might take such course, and it was taken. The probation officer a few months later found that the respondent was again drinking heavily, that he was visiting saloons, and was guilty of other improper and unlawful conduct; whereupon on or about August 12, 1911, the officer again took respondent into custody for the reason that the latter had violated the conditions of his parole, and imprisoned him in the Kent county jail, where he remained until September 2, 1911, when he was brought into said superior court, and by the judge thereof was sentenced to the Michigan reformatory at Ionia, where he is now confined. Before sentence, the respondent demanded an examination in open court of the charge of having violated his probation. This demand was refused, and respondent's counsel excepted.

The respondent has brought the case here for review, and the following are the assignments of error:

(1) That the court erred in directing and causing the rearrest of the said respondent on the 12th day of August, 1911, for the reason that upon the release of said respondent from custody on the 26th day of April, 1911, said court lost all further jurisdiction over him in the cause.

(2) That the court erred in passing sentence upon the said respondent on the 2d day of September, 1911, for the reason that the release of said respondent on the said 26th day of April, 1911, was in law and in effect a full and complete discharge of said respondent, and said court had no further jurisdiction over him, to either order his arrest, or to sentence him.

(3) That the court erred in passing sentence upon the respondent on the 2d day of September, 1911, for the reason that the statute (Act No. 91, Public Acts of 1903, as amended by Act No. 124, Public Acts of 1909) is unconstitutional and void, as it denies the respondent the benefit of counsel as a matter of right, as there is no provision in said acts for his defense on the violation of his probation, as provided for in section 19, art. 2, of the Constitution of this State.

(4) That said act and its amendments are unconstitutional, as they deny to the respondent the right to be confronted with witnesses who allege the violation of the

terms of his probation, and are therefore in conflict with said section and article.

(5) That said act as amended is unconstitutional for the further reason that it deprives the respondent of the right to a trial by jury, as to those facts relating to the violation of the terms of his probation.

(6) That said act as amended is unconstitutional for the further reason that it deprives the respondent of his liberty without due process of law, as provided in section 16 of article 2 of said State Constitution.

(7) That said act as amended is unconstitutional for the further reason that by its terms said respondent is more than once placed in jeopardy for the same offense.

Act No. 124, Public Acts of 1909, amends section 1 of the original act to read as follows:

"SECTION 1. Provided the defendant has never before been convicted in this State or elsewhere of a felony other than simple larceny, after a plea or verdict of guilty in any case where the commission of a crime or misdemeanor is charged and where discretion is conferred on the court as to the extent of the punishment, the several circuit courts of this State and all other courts having like jurisdiction in criminal cases, where it may appear to the satisfaction of the court that the circumstances are such that the defendant is not likely to again engage in a criminal course of conduct, and that the public good will be as well subserved as to pass and enforce sentence, shall have power to place the defendant on probation under the charge and supervision of a probation officer in the following manner: *First,* before passing sentence, the court before whom he stands convicted may place the defendant in the custody and under the supervision of the probation officer, or some other suitable person, and under such terms and conditions as it may require, and may require a recognizance with one or more sufficient sureties and in such penalty as the court may deem reasonable, conditioned for the appearance of the respondent at such times as the court may order; *second,* at any time during the probationary term of a person convicted and released on probation as aforesaid, the court before which the person was so convicted, when presided over by its judge at the time of the conviction, or his successor in office, may in its discretion revoke and terminate such probation. Upon such revocation and termination the court may immediately

pronounce judgment, imposing fine or imprisonment, or both, at any time thereafter within the longest period for which the defendant might have been sentenced. The court whenever satisfied that the respondent has sufficiently reformed, that it is reasonably certain that he will not thereafter pursue a life of crime, may terminate said probation and discharge the respondent from custody."

Section 4 of the original act of 1903 has not been changed, and it provides that probation officers shall have, as to persons committed to their care, the powers of a sheriff. Section 7 makes it the duty of the probation officer to report to the court any violation or breach of the terms and conditions imposed by said court upon the persons placed in his care.

1. The first and second assignments of error may well be considered together. As we understand counsel for the respondent, they claim that the court, because of what occurred on or about April 13, 1911, revoked and terminated the probationary term of respondent, and that, under the statute, it only remained for the court to proceed to sentence, and that, because it permitted the probation officer to hold the respondent in jail a few days, it thereby exhausted its authority to pronounce sentence. It might be well to ascertain what power the court has, under this statute, and what authority was actually given to the officer by the court in this instance. The statute provides that, before passing sentence, the court may place the respondent in the custody and under the supervision of the probation officer, "under such terms and conditions as it may require." The record discloses that, when respondent was placed in charge of the probation officer, such officer was then and there instructed by the court to take respondent into custody at any time thereafter that the respondent violated the conditions of his probation and such officer was further instructed to report to the court the fact of respondent's commitment. The record shows that the respondent violated the conditions of his probation, and was taken into custody by the officer in ex-

act accord with the instructions of the court. The officer also, as he was required to do, reported the fact of respondent's commitment to the court. It also appears that it was the opinion of the probation officer that if respondent—

"Was kept in jail a few days, and then given another chance, that he would perhaps be able to keep the conditions of his parole in the future, and he [the officer] was informed by the court that he might take such course."

We find nothing here to indicate that the court revoked and terminated the probation. Certainly the probation officer could not terminate it.

Under the scheme or plan of this statute, the respondent was all of the time in charge and custody of the probation officer; and, unless we are to hold that such officer has the power to revoke and terminate such probation, it cannot be held that anything which the officer did amounted to such revocation. We do not think that the officer had such plenary power, nor do we think that he attempted to exercise it. He was simply obeying the order of the court made in the first instance. Nor do we think that there was any action of the court in April that indicated that it revoked and terminated the probation. We are not prepared to hold that, under the humane provisions of this statute, the court dealing with such a case may not continue, modify, and even extend the period of probation in the hope that the respondent may sufficiently reform, so that in the end he may be discharged from custody. Until final sentence on September 2, 1911, the respondent was all of the time in the charge and custody of the probation officer. On that day he was in jail in the custody of the probation officer, who possessed all of the powers of a sheriff, in the matter, and on that day respondent's probation was properly revoked and terminated by the court and sentence was pronounced. We are of opinion that there was no error in these proceedings. *Conlon's Case,* 148 Mass. 168 (19 N. E. 164); *Ex parte Sizelove,* 158 Cal. 493 (111 Pac. 527); *People* v. *Flynn,* 55 Misc. Rep.

639, 106 N. Y. Supp. 925. The placing of persons convicted of crime in the custody and care of probation officers under the statute is a part of our penal system, and must to a large extent be directed and controlled by the sound discretion of the officers representing the State, subject at all times to the supervision and direction of the court in which the case is pending for sentence. *Commonwealth* v. *McGovern*, 183 Mass. 238 (66 N. E. 805); *Renado* v. *Lummus*, 205 Mass. 155 (91 N. E. 144).

2. The third, fourth, and fifth assignments of error will be considered together. It is here claimed that the statute is unconstitutional because in the matter of the termination and revocation of the probation no provision is made for benefit of counsel, for the right to be confronted with witnesses, and the right of trial by jury. These rights are only given by the Constitution in criminal proceedings. The violation of the terms of probation is not a crime necessarily, and is not treated as a crime, but is rather in the nature of a breach of contract. As we have already said, the respondent was all of the time in the care and custody of the probation officer, acting under the direction of the court. When probation was granted, respondent agreed to its terms, and fully understood that, for certain misconduct, his probation would be revoked and terminated. This is of the very essence of the plan. When brought before the court for sentence, he is not charged with a new crime, but merely with the violation of his agreement with the court. In no sense can this be said to be a criminal prosecution. The respondent was granted his probation subject to this liability. A similar feature appears in the law of other States, and has, in so far as we have been able to find, been sustained when questioned. *People* v. *Warden*, 39 Misc. Rep. 113, 78 N. Y. Supp. 907; *Fuller* v. *State*, 122 Ala. 32 (26 South. 146, 45 L. R. A. 502, 82 Am. St. Rep. 1); *Conlon's Case*, *supra; State* v. *Hunter*, 124 Iowa, 569 (100 N. W. 510, 104 Am. St. Rep. 361); *People* v. *Cook*, 147 Mich. 127 (110 N. W. 514). This respondent had not been set at

liberty under the pardon of the executive. He was not a "free man" within the meaning of the language used in *People* v. *Moore*, 62 Mich. 496 (29 N. W. 80), but was all of the time in the custody of the probation officer awaiting sentence in a certain contingency. We think that the cases are readily distinguished. We are of opinion that there is no merit in these assignments.

3. The same considerations apply to the sixth and seventh assignments of error. Respondent has not been deprived of his liberty without due process of law. When he pleaded guilty to the information filed against him, he might have been sentenced at once. It is only by the mercy of the law that he was given probation. If by the violation of the terms of his probation he is called before the court for sentence for the crime of which he had freely pleaded guilty, it cannot be said that he is deprived of his liberty without due process of law.

We find no error in the record, and the judgment of the superior court is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, OSTRANDER, and BIRD, JJ., concurred. KUHN, J., did not sit.