Ex parte Bates, 20 N. M. 542.

---

[No. 1813, July 17, 1915.]
[Rehearing Denied August 25, 1915.]
Ex parte BATES.

### SYLLABUS BY THE COURT.

1. A statute authorizing the courts in their discretion to suspend any sentence imposed upon persons convicted of felony, upon such terms and conditions as they shall deem proper, being section 1 of chapter 32, Laws 1909, as the same appears in the Code of 1915 as section 5075, does not encroach upon the constitutional power of the executive to grant reprieves and pardons.                                P. 544

Ex parte Bates, 20 N. M. 542.

2. A court, having power to make an order suspending the execution of its judgment in criminal cases, necessarily, upon a violation of such order, has the power to revoke the same and commit the accused.

P. 554

Application by Thomas M. Bates for writ of habeas corpus. Petitioner remanded to custody, and writ discharged.

FRANK W. CLANCY, Attorney General, and HARRY S. BOWMAN, Assistant Attorney General, for the State.

H. D. TERRILL of Silver City, for relator.

### STATEMENT OF FACTS.

This is an application by Thomas M. Bates for a writ of habeas corpus, based upon the following state of facts, to-wit: The petitioner, on the 21st day of October, 1914, was sentenced to serve a term in the state penitentiary of not less than 12 nor more than 15 months, from and after said date, upon a verdict of guilty by a jury upon an indictment charging an assault with intent to kill. The judgment of the district court was suspended during the good behavior of the defendant, and upon payment of the costs in said action. Thereafter, on May 15, 1915, the petitioner was charged with an assault with a deadly weapon, and upon examination was bound over to the grand jury to appear at the September, 1915, term of the district court of Grant county. On May 22, 1915, the district court of Grant county made an order, based upon the second charge, requiring the petitioner to appear on the 25th day of May, 1915, and show cause why the suspended sentence of October 21, 1914, should not be enforced. On June 1, 1915, the petitioner answered said rule to show cause, challenging the jurisdiction of the trial court, and the said district court, after hearing the testimony of two witnesses concerning the fact of the second offense, ordered that a commitment issue committing the petitioner to the state penitentiary to serve the suspended sentence under the former judgment of said court.

OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—[1]
The petition presents a novel question, and one of first
impression in this jurisdiction, not without its difficulties,
and the solution of which has developed a wide divergence
of opinion in those courts which have had the question be-
fore them; the principal question presented being whether
the act of the district court, in ordering a suspension of
the sentence fixed by its judgment, was an encroachment
upon the power vested by the Constitution in the execu-
tive to pardon and reprieve. Numerous cases are to be
found in the books holding that the power to suspend sen-
tence is inherent in all courts of record, and essentially a
judicial function, although this view of the matter has not
been adopted by all the courts, and a minority strongly
adhere to a contrary rule. We are not confronted with
this phase of the question, however, because the question
does not arise upon the theory that the attempted exer-
cise of this power is one necessarily inherent in the court;
but the question as presented for our consideration must
be determined by a consideration of whether or not section
1 of chapter 32 of the Laws of 1909 by conferring upon
courts, in their discretion, the right to suspend any sen-
tence after conviction for felonies, is violative of the pro-
visions of section 6 of article 5 of our state Constitution,
conferring upon the Governor the power to grant reprieves
and pardons after conviction for all offenses, except trea-
son, and in cases of impeachment. The act of the Legis-
lature referred to, which is incorporated in the New Mex-
ico Code of 1915 as section 5075, is as follows:

"Every person who shall be convicted of a fel-
ony or other crime punishable by imprisonment
in the penitentiary, if judgment be not suspend-
ed or a new trial granted, shall be sentenced to
the penitentiary. The court in imposing such
sentence shall fix the maximum and minimum
duration of the same. The term of the imprison-
ment of any person so convicted shall not exceed
the maximum nor be less than the minimum term

> fixed by the court. The release of such person
> shall be determined as hereinafter provided: Pro-
> vided, that the court may, in its discretion, sus-
> pend any sentence imposed upon such terms and
> conditions as it shall deem proper, and such sen-
> tence shall go into effect upon order of the court
> upon a breach of any of such terms or conditions
> by the person convicted."

The solution of the question as to whether or not the foregoing act of the territorial Legislature is unconstitutional is, as stated, the first matter presented for our attention. By the petitioner it is contended that the act is constitutional, and that the action of the district court in suspending sentence was one within its jurisdiction, but that, before the petitioner can be committed under the judgment, it is necessary that he should be found guilty of the subsequent offense, if any there be, in a manner prescribed by law, and that the action of the district court in taking the testimony of witnesses, and finding that the condition of the suspended sentence had been violated, was an erroneous exercise of jurisdiction, in that the district court, by so doing, was usurping the functions of the trial jury.

The Attorney General takes the position that the act authorizing the suspension of a sentence is in conflict with the provision of the Constitution vesting in the executive the power to grant reprieves and pardons after conviction for all offenses. This provision of our state Constitution is as follows:

> "Subject to such regulations as may be pre-
> scribed by law, the Governor shall have power to
> grant reprieves and pardons, after conviction for
> all offenses except treason and in cases of im-
> peachment." Section 6, art. 5.

Assuming this to be true, the Attorney General argues that the action of the district court in suspending the sentence imposed upon the petitioner was a nullity, and that the commitment upon the judgment and sentence imposed on October 21, 1914, could therefore issue at any

time, upon the theory that the judgment imposed is not satisfied until the sentence has been served. The right of the district court to withhold its judgment, or to temporarily delay the pronouncement of sentence, is not brought into question. As we understand the contention of the Attorney General, it would appear that he has assumed that the Legislature has no right to authorize any court to suspend a sentence already imposed, and in this we might agree that the Attorney General is correct; but such is not the state of facts presented for our consideration at this time.

The judgment of the district court here questioned was complete in all particulars, but contained the condition, contemplated by the statute as a concluding part of the judgment, that the judgment and sentence of the court be suspended during the good behavior of the defendant, and upon payment of the costs accrued in the cause. The condition was, therefore, a part of the judgment, and it was not an attempt to suspend a judgment previously imposed, but was, as is clearly indicated by the language of the judgment, a suspension thereof during good behavior, and to that extent, affects only the degree of the punishment imposed for the offense charged. It is clearly within the province of the Legislature to denominate and define all classes of crime, and to prescribe for each a minimum and maximum punishment. This the Legislature has done as to practically all offenses known to the common law, and many others created by statute, and in a very large number of offenses for which punishment has been prescribed the Legislature has shown an intent to vest in the trial courts a large discretion in the matter of the degree of punishment to be imposed in individual cases, upon the theory, doubtless, that justice can be best served by a proper exercise of a discretion vested in the courts, as they, having all the facts and circumstances surrounding the individual cases before them, can best administer the justice which the public has a right to exact, and yet at the same time temper the same with that de-

Ex parte Bates, 20 N. M. 542.

gree of mercy which the individual case and peculiar circumstances thereof may demand.

This disposition of Legislatures to relax the harsh penalties of the common law is more clearly apparent in legislation of the character of the act of 1909 now under consideration than in the general or special statutes referred to. In this act there is shown a clear intention of the Legislature to modify in given cases the penalties prescribed for any felony or other crime punishable by imprisonment in the penitentiary, and to permit the suspension of judgment in any such case in the discretion of the trial court. It is clear, therefore, that this statute must be read in connection with every statute prescribing the punishment to be imposed for the commission of any crime denominated as a felony, and it may well be considered that the Legislature, by the act of 1909, has vested in the courts the right to say that in given cases no punishment at all shall be imposed, provided the defendants in such cases comply with the terms and conditions which the judge, in the exercise of a sound discretion, shall attach to and incorporate in his judgment. If this reasoning be sound, it may well be said that there can be no conflict between a legislative act of this character and the power to reprieve and pardon vested in the executive, because the element of punishment or the penalty for the commission of a wrong, while to be declared by the courts as a judicial function under and within the limits of law as announced by legislative acts, concerns solely the procedure and conduct of criminal causes, with which the executive can have nothing to do. As was well said by the New York Court of Appeals in the case of People ex rel. Forsyth v. Court of Sessions, 141 N. Y. 288, 36 N. E. 386, 23 L. R. A. 856:

"The power to suspend sentence and the power to grant reprieves and pardons, as understood when the Constitution was adopted, are totally distinct and different in their origin and nature. The former was always a part of the judicial power. The latter was always a part of the ex-

ecutive power. The suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction and liability following it, and all civil disabilities, remain and become operative when judgment is rendered."

The discussion by this court in the case cited is so apropos of the state of facts in the present case, and so comprehensive of the entire question, that we take the liberty of quoting from that opinion somewhat extensively, believing that it is the only logical solution of the question here presented for consideration. The court said:

"We therefore conclude that a statute which in terms authorizes courts of criminal jurisdiction to suspend sentence in certain cases after conviction—a power inherent in such courts at common law, which was understood when the Constitution was adopted to be an ordinary judicial function, and which ever since its adoption has been exercised by the courts—is a valid exercise of legislative power under the Constitution. It does not encroach in any just sense upon the powers of the executive as they have been understood and practiced from the earliest times. The power to suspend the judgment during good behavior, if understood as expressing a condition, upon the compliance with which the offender would be absolutely relieved from all punishment and freed from the power of the court to pass sentence, is open to more doubt. The Legislature cannot authorize the courts to abdicate their own powers and duties, or to tie their own hands in such a way that, after sentence has been suspended, they cannot, when deemed proper and in the interest of justice, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled exercise of this power or the right to pass sentence according to the discretion of the court

be made dependent upon compliance with some condition that would require the court to try a question of fact before it could render the judgment which the law prescribes. The statute must not be understood as conferring any new power. The court may suspend sentence as before, but it can do nothing to preclude itself or its successors from passing the proper sentence whenever such a course appears to be proper. This, we think, is all that the statute intends, and that was the only effect of the judgment. It is a power which the court should possess in furtherance of justice, to be used wisely anl discreetly, and it is perhaps creditable to the administration of justice in such cases that, while the power has always existed, no complaint has been heard of its abuse."

We are not unaware of the fact that the weight of authority may be against the right of the courts to suspend sentence during good behavior, except for short periods pending the determination of motions or other considerations arising in the cause after verdict, though in most of the cases which we have examined the question arose upon a right of the court to suspend sentence as an inherent power of court, and in a few cases the question is squarely presented under a statute conferring the power, and it is held that the statute is unconstitutional, either upon the ground that the court loses jurisdiction where the sentence is deferred to some future time, or, as in the case of United States v. Wilson (C. C.) 46 Fed. 748, where the court held that a suspension of sentence for an uncertain time, as where the defendant should continue to remain so favorably impressed with the laws of the land as to obey them, was not a mere suspension of sentence, but operated as a condonation of the offense, and the exercise of a pardon power which was never conferred upon the court, and in the exercise of which the court clearly transcended its authority.

In New York it has been held that the Court of Special Sessions has the power at common law to suspend sentence indefinitely, or for a limited period, and that this power is impliedly recognized, if not expressly given, by statute. People ex rel. Dunnigan v. Webster, 14 Misc. Rep. 617, 36 N. Y. Supp. 745; People v. Graves, 31 Hun. 382. And in People v. Markham, 114 App. Div. 387, 99 N. Y. Supp. 1092, the right to suspend judgment was impliedly recognized, although not expressly declared. In People v. Bork, 78 N. Y. 346, at page 350, the court said:

> "There was in the Oyer and Terminer a conviction, but sentence was suspended. There was, therefore, in that court no judgment, because the sentence is the judgment."

The authorities in those states possessing statutes authorizing the release of defendants after conviction upon probation are of necessity based upon similar reasoning, and in a number of them the right of the court to so release the defendant is recognized. See Spade v. State, 44 Ind. App. 529, 89 N. E. 604; Smith v. Hess, 91 Ind. 424.

In a number of cases the question has arisen under statutes authorizing the courts to suspend sentence in criminal cases after conviction, where the courts have held that the power conferred by statute does not encroach upon the constitutional power of the executive to grant reprieves and pardons. See People v. Stickle, 156 Mich. 557, 121 N. W. 497, in which case the court said, although the question was not raised in the court below:

> "We cannot assume that interference with the judicial power was intended [referring to the constitutional provision], or that the design was to confer any new power."

See, also, People ex rel. Sullivan v. Flynn, 55 Misc. Rep. 639, 106 N. Y. Supp. 925, where the court said:

> "This statute was what might be called the initiative step in the establishment of the beneficent feature in our criminal procedure of probation, through which the erring, in the exercise of a wise discretion by the judge presiding, are

to be given an opportunity of reclaiming or re-
trieving themselves under given conditions and
regulations."

See, also, People ex rel. Forsyth v. Court of Sessions,
supra.

In the case of State v. Smith, 173 Ind. 388, 90 N. E.
607, the Supreme Court of Indiana, in construing a stat-
ute similar to the one now under consideration, said:

"It is evident that said statute does not at-
tempt to authorize such courts 'to suspend sen-
tence' and 'parole such persons' after final judg-
ment has been rendered in such case. The order
suspending sentence and paroling such person
must be entered as a part of the judgment of
conviction, and if such order is not then made
and entered the court has no authority under
such statute to make such order afterwards."

The statute of Indiana under construction provided
that, upon the entry of judgment of conviction, the courts
should have the power to suspend the sentence and parole
the defendant by an order of the court duly entered of
record as a part of the judgment of the court in such case.
While our statute is not as specific as to when the order
of suspension should be made, if made, the entire section,
when read together, clearly indicates that "the court, in
imposing such sentence," may in its discretion suspend
the same upon "such terms and conditions as it shall deem
proper"; and the act further provides that such sentence
shall go into effect upon order of the court upon a breach
of such conditions, all of which would clearly indicate that
the conditions are to be imposed at the time the sentence
is declared, as otherwise it would go into effect without
terms or conditions, and therefore, this being true, the
order of suspension of the sentence must necessarily be a
part of the judgment, and, as pointed out heretofore, have
to do solely with the trial of the case, leaving nothing to
be done after final judgment which might be said to con-
flict with the power of the executive to reprieve or par-
don, a right which would not exist until after final judg-

ment had been pronounced and the jurisdiction of the court concluded.

In State v. Mallahan, 65 Wash. 287, 118 Pac. 42, it was held that the court had authority to suspend the sentence and later commit the appellant, under the provisions of section 1 of chapter 24 of the Session Laws of 1905, in force when the plea of guilty was entered, and section 28, chapter 249, of the Session Laws of 1909, in force when appellant was finally committed. The provisions of these statutes do not appear, but the court held in this case that a power existed in the court to enforce a suspended sentence under these statutory provisions, or otherwise the effect of an order of suspension would be to finally discharge the prisoner and deprive the trial court of further jurisdiction over him. This authority is of little weight, except as impliedly recognizing the validity of the statute authorizing the suspension in criminal cases.

In Ex parte Giannini, 18 Cal. App. 166, 122 Pac. 831, a California statute somewhat similar to ours, but limited as to the time within which a sentence might be suspended, directing that such suspension should continue for a period of time not exceeding the maximum possible term of the sentence, was under consideration by the District Court of Appeal of the Second District of California, and while an attack was not made upon the constitutional validity of this act, at least so far as the opinion discloses, the court said, referring to the act in question:

"We are not of opinion that section 1203, Penal Code, as now existing, interferes in any way with the functions and duties of the chief executive of the state. We think it competent for the Legislature, and an exceedingly wise provision, to confer upon the courts this power of suspension of sentence, to be exercised in proper instances, and that its enactment in no wise impairs the function of a co-ordinate branch of the government."

In the case of Weber v. State of Ohio, 58 Ohio St. 616, 51 N. E. 116, 41 L. R. A. 472, the court held that the

power to stay the execution of a sentence in whole or in part in criminal cases was inherent in every court having final jurisdiction in such cases, unless otherwise provided by statute. Many other authorities might be cited to the same effect, where the power has been held to be an inherent power of the court.

We do not desire to unduly lengthen this opinion by a consideration of the numerous cases cited holding that no inherent power exists in a court to suspend sentence indefinitely. Many, if not all, of them can be distinguished. We may, however, point to two of the leading cases among the more recent authorities. The first is Fuller v. State (Miss.) 57 South. 6, 39 L. R. A. (N. S.) 242, in which case the court held that the power to suspend the execution of sentence had not been conferred upon any court in the state by the Constitution or statutes, and was not necessarily an inherent power. It was clearly pointed out in the additional opinion that the question of the court's power to suspend the imposition of a sentence was not involved; the sole question being the power of the court to suspend the execution of the sentence after it had been imposed. This presents an entirely different phase of the question, as we have indicated in this opinion.

The case of State v. Abbott, 87 S. C. 466, 70 S. E. 6, 33 L. R. A. (N. S.) 112, Ann. Cas. 1912B, 1189, was another case where no statutory power had been conferred upon the courts, and in which the Supreme Court of South Carolina held that the attempted exercise of such power was violative of the statute law of the state, in that it was purely a legislative function to fix punishment for crime, which power was invaded where the courts attempted to suspend the sentence.

It is therefore clearly to be seen that we have a different state of facts here presented, in that the Legislature has in this jurisdiction specifically authorized the so-called trespass upon its power or function. We therefore conclude that our statute, authorizing the courts in their dis cretion to suspend any sentence imposed upon persons convicted of a felony, upon such terms and conditions as

they shall deem proper, being section 1 of chapter 32, Laws of 1909, as the same appears in the Code of 1915 as section 5075, does not encroach upon the constitutional power of the executive to grant reprieves and pardons.

[2] Our conclusion upon the question of the constitutionality of the act of 1909 brings us to the only other question in the case, which involves the power of the court to set aside the order of suspension and commit the accused to the penitentiary for the breach of the condition imposed by the judgment. It is pointed out that there is no procedure provided by the statute in question to be followed by the court in determining whether or not a breach of the condition has arisen. It is contended that the lower court could have no jurisdiction to commit the defendant under such suspended sentence until after the defendant had been found guilty of the alleged bad behavior in a regular proceeding, after formal charge, presentation, and conviction.

The contention of relator, as we understand it, is that the court has, by its investigation looking to the determination of whether or not the condition upon which the suspension of sentence was based has been broken, proceeded to the trial of a criminal case and determined the guilt of the relator. Were this true, the contention of relator would be sound, and we do not agree that the vesting of any such power in the district court was contemplated by the statute, or could, in fact, be conferred upon the court, without impairing the constitutional rights of relator. It is our conclusion, however, that the district court was not determining, by its inquiry, whether or not the second offense had been committed, for the purpose of a trial as to that offense within the purview of legal procedure; but the inquiry was solely for the purpose of determining whether or not the condition imposed upon as a part of the first judgment had, as a matter of fact, been breached, and the commitment clearly indicates that its issuance was directed as a result of the breach of the condition of the judgment formerly entered. We do not consider that any new power was vested in the courts of this state by

the statute in question, or that any of the established rules of criminal procedure have been abolished, and, having held that it was within the power of the district court to make the order of suspension under the conditions and circumstances pointed out, it must necessarily follow that the court, having the power to make the order, necessarily possessed the power, upon a violation of the order, to set aside the same and commit the defendant.. As was held by this court in the case of Ex parte Lujan, 18 N. M. 310, 137 Pac. 587:

> "If it be conceded that the court had the power to make the order, suspending the execution of the judgment, it would follow necessarily that, upon violation of the order, the court would have the right to revoke the order and commit the defendant."

We therefore conclude that it is within the power of the district court to issue the commitment after determination of the fact of the breach of the condition imposed as a part of the judgment entered by the district court of Grant county, on the 21st day of October, 1914, for which reason the prisoner will be remanded to the custody of the sheriff of Grant county, to be dealt with according to law, and the writ of habeas corpus will be discharged; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

SYLLABUS BY THE COURT.

