Ex parte JERRY WILBUR BOYD.

No. A-10107. Feb. 4, 1942.

(122 P. 2d 162.)

442

Sid White, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J. This is an original proceeding filed in this court by the petitioner, Jerry Wilbur Boyd, to secure his release from imprisonment in the State Reformatory at Granite.

The verified petition filed herein alleges in substance as follows:

That the petitioner is 22 years of age and has been imprisoned in the State Reformatory at Granite since July 8, 1939; that on July 20, 1935, an information was filed in the district court of Oklahoma county charging the petitioner with larceny of an automobile; that on July 22, 1935, the petitioner entered his plea of guilty to said charge and was sentenced to serve a term of five years in the State Reformatory at Granite, to begin from the date of the delivery of the defendant to the warden of said reformatory; that at the same time and as a part of the same proceedings, the district court of Oklahoma county suspended the judgment and sentence pronounced against the defendant upon the following terms and conditions, to wit:

"(1) That said defendant shall refrain from associating with bad, lewd or vicious men or women; (2) that

said defendant shall not indulge in vicious habits; (3) that said defendant shall not violate any criminal law of this state, the United States, or any state or territory of the United States of America, but shall be a quiet, peaceful and law-abiding citizen; (4) that said defendant shall refrain from loitering in or around or frequenting pool or billiard halls; (5) that said defendant shall personally appear before the undersigned judge of this court once each month, and, if required by the court or judge, prove to the satisfaction of said judge, by two citizens of the county of good reputation, that said defendant has not violated any of the terms or conditions of this judgment and sentence; (6) that said defendant shall not depart from the jurisdiction of this court without leave."

That subsequent to said time, and about May 1, 1939, the petitioner was again arrested and placed in the county jail of Oklahoma county upon suspicion of having committed the crime of grand larceny; that two days later, on the 3rd day of May, 1939, the petitioner was taken before the Honorable Clarence Mills, one of the judges of the district court of Oklahoma county, Oklahoma, and who was the judge who had suspended the sentence theretofore pronounced upon the petitioner; that when the petitioner was taken before the district judge, and without any formality, the judge announced that the order suspending the petitioner's sentence would be and was revoked. A copy of which said order revoking suspended sentence is attached to the petition and made a part thereof; that on July 6, 1939, the petitioner, still being confined in the county jail of Oklahoma county, and knowing little or nothing of his legal rights, and hopeless of securing his release from imprisonment, entered his plea of guilty to two charges of grand larceny, after former conviction of a felony, in cases Nos. 13233 and 13234, respectively. That thereupon he was sentenced to serve two years in the State Reformatory at Granite upon his

plea of guilty in each of said cases, with a further provision that the judgment and sentence thus pronounced in those cases should run concurrently.

The petitioner concedes in his petition, for the purpose of this proceeding, the validity of the sentences imposed in cases Nos. 13233 and 13234, but alleges that if the petitioner is credited with the time served in the reformatory against the sentences imposed in those cases, his punishment is long since completed.

That when the district court of Oklahoma county entered the order revoking the suspended sentence theretofore made against the petitioner, no notice was given to the petitioner that an application had been made to revoke his suspended sentence, and no opportunity was given to the petitioner to be heard as to whether he had failed to comply with the conditions of his suspended sentence; that no accusation of any kind was ever filed charging the petitioner with the violation of any condition imposed upon him in the order suspending the sentence aforesaid; and that under the suspended sentence the petitioner became and was entitled to his liberty until he had forfeited that right by a hearing in accordance with due process of law.

The order revoking suspended sentence, attached to the petition filed herein and made a part thereof, reads as follows:

"Now, on this 3rd day of May, 1939, this cause comes on for hearing to revoke and set aside the order heretofore made on the 20th day of July, 1935, suspending the sentence of the defendant, said defendant being present in court, and it appearing to the court that heretofore to wit: on the 20th day of July, 1935, the defendant entered his plea of guilty to the charge of larceny of an automobile and was sentenced to serve a term of five years in the state reformatory at Granite, Oklahoma, said sentence to

run from the date of delivery to the warden of the said state reformatory by the sheriff of Oklahoma county, Oklahoma; that on said date this court made an order suspending the sentence of said defendant pending his good behavior; thereafter, the State of Oklahoma filed herein motion to set aside and revoke said suspended sentence, the matter was properly set for hearing, the defendant being wholly and fully advised of his rights herein.

"The court finds and is satisfied from the evidence introduced that the said defendant has violated the terms and conditions of the order heretofore made on the 20th day of July, 1935; by reason thereof the court finds that said suspension of sentence should be set aside and the sentence carried out in full according to its terms."

The petitioner attaches to his petition a certified copy of the appearance docket of the district court of Oklahoma county, in the case wherein the petitioner received a suspended sentence, to show that no motion or petition was ever filed by any one alleging that he had violated the conditions of his suspended sentence, and to refute the recital in the order revoking the suspended sentence that a motion had been presented by the county attorney, asking that the suspended sentence be revoked for a violation of some of the conditions imposed upon the petitioner.

To this petition the warden of the State Reformatory, acting by and through the Attorney General of the State of Oklahoma, has filed a demurrer, alleging that the petition, taken in conjunction with the exhibits attached thereto, does not show facts entitling the petitioner to the relief prayed.

This case was argued at length before the court, and excellent briefs have been presented by both petitioner and respondent to sustain their respective theories.

We find from an examination of these authorities that the question herein presented has been decided by the

courts of last resort in most of the states, and by the Supreme Court of the United States upon questions brought to that court involving alleged violations of sentences of probation by persons convicted in the federal courts.

It is the contention of the petitioner that when the execution of sentence is suspended, it confers a positive, substantial right upon the defendant, which he may plead in the same manner and to the same extent as his right to be considered innocent of the original crime of which he has been convicted; and that being a substantial right, the same may not be taken away from him except by due process of law, which means that he is entitled to a hearing as to whether he has violated the conditions of his parole, according to some well-recognized and established rules of judicial procedure.

In support of this position the petitioner cites the cases of State v. Zolantakis, 70 Utah, 296, 259 P. 1044, 54 A.L.R. 1463; Ex parte Lucero, 23 N. M. 433, 168 P. 713, L.R.A. 1918C, 549; State v. Gooding, 194 N.C. 271, 139 S.E. 436; Fleenor v. Hammond, 6 Cir., 116 F. 2d 982, 132 A.L.R. 1241.

On the other hand, it is contended by the respondent that the granting of a suspension of sentence is a matter resting in the sound judicial discretion of the trial judge, and that if all of the constitutional and statutory guarantees have been observed in the trial of a defendant for the crime of which he was convicted, the requirements of due process are fully satisfied, the presumption of innocence has been overcome, and future action under the statute rests solely within the sound judicial discretion of the trial judge.

The respondent in support of his position, in addition to distinguishing our statute from the statutes of other states concerning this question, cites the opinion of Chief

Justice Hughes of the United States Supreme Court in Burns v. United States, 287 U.S. 216, 53 S. Ct. 154, 77 L. Ed. 266; Varela v. Merrill, 51 Ariz. 64, 74 P. 2d 569; 16 C.J. 1335; 24 C.J.S., Criminal Law, § 1618; State v. Miller, 122 S.C. 468, 115 S.E. 742; People v. Goodrich, Sup., 149 N.Y.S. 406; Ex parte Patterson, 94 Kan. 439, 146 P. 1009, L.R.A. 1915F, 541; People v. Dudley, 173 Mich. 389, 138 N.W. 1044, and others.

This case is one of first impression in the State of Oklahoma. We have carefully read all of the cited decisions and many others in an effort to arrive at a proper conclusion concerning the interpretation which should be placed on our statute. In reading these various cases we have found that most of them concern an interpretation of statutes which either expressly provide for notice to be given to the accused and an opportunity to be heard before revocation is made or concern statutes which expressly provide for a summary hearing without notice.

The granting of a suspended sentence is regulated solely by statute. This power did not exist in the court at common law, and the language of the Oklahoma statute is therefore material in determining the procedure to be followed.

The Oklahoma Statute in question, section 2, art. 2, ch. 17, p. 20, Laws 1937, 22 Okla. St. Ann. § 992, reads:

"Any person so released as provided in the preceding section shall be required to report to the judge of the court wherein convicted, at each succeeding term during the pendency of said judgment, or when required by the court or judge, and prove to the satisfaction of said judge by two citizens of said county of good reputation, that said person has not violated any law, and has been a quiet, peaceful and law-abiding citizen. Provided, that if it shall be made to appear to said judge that said person so released has been guilty of a violation of any law after his

said release, or is habitually associating with lewd or vicious persons, or is indulging in vicious habits, in that event said court shall cause a warrant to be issued for said person, and he shall be delivered forthwith to the place of confinement to which originally sentenced, and shall serve out the full term for which he had originally been sentenced."

In considering this statute, the first question with which we are concerned is whether the statute is constitutional, i. e., whether the power conferred upon the courts to suspend sentence is an invasion of the clemency power of the Governor, and therefore unconstitutional.

Neither counsel for petitioner nor for respondent contend that the statute is unconstitutional, but on behalf of the petitioner it is insisted that if the Oklahoma act is constitutional it must be so because it confers a right upon the defendant to which he is entitled, and is not a matter within the discretion of the trial court. For the purpose of his argument he then assumes the constitutionality of the statute and asserts that since the conferring of a suspended sentence is given to the defendant as a right to which he is entitled, the same may not be taken away except by due process of law, the same as in the original trial.

Section 10, art. 6, Oklahoma Constitution, Okla. St. Ann. provides:

"The Governor shall have power to grant, after conviction, reprieves, commutations, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the

450

date and place of conviction and the date of commutation, pardon, parole, or reprieve."

The Federal Constitution, art. 2, § 2, vests the power of pardon in the President; and the federal courts, without exception, in construing probationary statutes in which the federal courts were authorized to place prisoners upon probation after their conviction, have held that such acts of Congress were not unconstitutional as being in conflict with the pardoning power of the President.

Riggs v. United States, 4 Cir., 14 F. 2d 5, certiorari denied 273 U. S. 719, 47 S. Ct. 110, 71 L. Ed. 857; Riggs v. Workman, 273 U.S. 719, 47 S. Ct. 110, 71 L. Ed. 857; Cooper v. United States, 5 Cir., 91 F. 2d 195; Hollandsworth v. United States, 4 Cir., 34 F. 2d 423.

In Cooper v. United States, supra [91 F. 2d 199], it is stated:

"The probation is not pardon, either absolute or conditional, for the power of pardon is vested in the President. It is an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. The probationer is not a free man, but is subject to surveillance, and to such restrictions as the court may impose. We do not agree with appellants' contention that probation, like pardon, may be refused by the convicted person. The act vests a discretion in the court, not a choice in the convict."

The conclusion of the federal cases above cited is that suspension of sentences followed by probation is intended as a reforming discipline, the system having been instituted for the purpose of giving persons who come within the operation of the statute an opportunity for reformation.

This view seems to have been followed by the decisions of the courts of last resort in the states which have had occasion to consider the question. Murphy v. State,

171 Ark. 620, 286 S.W. 871, 48 A.L.R. 1189; Howe v. State, 170 Tenn. 571, 98 S.W. 2d 93; Richardson v. Commonwealth, 131 Va. 802, 109 S.E. 460; State ex rel. v. Zangerle, 136 Ohio St. 371, 26 N.E. 2d. 190; In re Siraguso's Probation, 106 Colo. 89, 101 P. 2d 26; Ex parte Eaton, 29 Okla. Cr. 275, 233 P. 781; Moore v. Thorn, 245 App. Div. 180, 281 N.Y.S. 49; State ex rel, Bottomly v. District Ct., 73 Mont. 541, 237 P. 525; Williams v. State, 162 Ga. 327, 133 S.E. 843; In re Nachnaber, 89 Cal. App. 530, 265 P. 392; In re Hall, 100 Vt. 197, 136 A. 24; Ex parte Bates, 20 N.M. 542, 151 P. 698, L.R.A. 1916A, 1285.

In the case of Ex parte Eaton, supra, this specific question was brought to the attention of our court. In a unanimous opinion the Criminal Court of Appeals, speaking through Judge Edwards, stated [29 Okla. Cr. 275, 233 P. 782]:

"We believe that the sections of the statute above set out are constitutional and do not invade the province of the Governor, or chief executive, of the state in extending executive clemency. In this particular, executive clemency is to be distinguished from judicial authority, and the question for determination is: Does the district court have power under the statute above quoted to revoke the suspended sentence after the time covered by the sentence had run?"

The constitutionality of the statute was the sole point at issue in the Eaton Case, supra, and that decision should be determinative of this question in the State of Oklahoma. Sound reasoning supports this rule; and in accordance with the decision in Ex parte Eaton, supra, it is our conclusion that the statute herein involved is not in conflict with the constitutional provisions above quoted.

The case of State v. Zolantakis, supra, is the case most often referred to and cited by those who support the contention of petitioner herein. The Supreme Court of

Utah in its first opinion sustained the order of the trial court, revoking the suspended sentence of the accused and ordering him committed. Later, while the case was still pending before the court upon a petition for rehearing, the personnel of the court changed and by a three-to-two decision the earlier opinion was set aside and the action of the trial court reversed. The majority opinion held that one whose sentence is suspended during good behavior, without any limitation, has a right to a hearing as to whether or not he has complied with the conditions imposed, according to some well-recognized and established rules of judicial procedure, and filing of an affidavit or other pleading setting forth the facts relied on for revocation, with opportunity to plead to the charge, and the right to cross-examine witnesses, before revocation can be decreed; and that one under suspension of sentence during good behavior cannot be rearrested before a citation to show cause is served upon him, and given no notice of the charge against him until evidence is offered at the hearing.

Justice Cherry wrote a dissenting opinion, which to us seems sounder in principle than the conclusion reached by the majority. Chief Justice Hughes in his opinion in the case of Burns v. United States, supra, used language very similar to that used by Justice Cherry in his dissenting opinion. Justice Cherry in his dissent stated, in part [70 Utah, 296, 259 P. 1047, 54 A.L.R. 1463]:

"When the execution of a sentence is suspended, it is not vacated. The judgment itself is not impaired or limited. The time for its execution is merely deferred. While under a suspended sentence, a duly convicted person is not freed from the legal consequences of his guilt. He is merely enjoying a conditional favor, postponing his punishment, which may be withdrawn. When the suspension is revoked the convict is punished for the crime of

which he was convicted, and not for violating the terms of his parole. The suspension of a sentence can never be demanded as a matter of legal right. It is granted at the mere will of the court. When granted, it is not held as a vested right, but as a matter of favor or grace. The statute confers upon courts a discretionary power designed to aid in the reformation and reclamation of convicted persons. By impressing upon the convicted person that he is enjoying a contingent favor, which may be withdrawn or revoked at any time, it is sought to induce or coerce him to amend his ways. The whole force and virtue of the expedient lies in the reserved power of the court to revoke the favor and inflict the penalty. And if this is hedged about with limitations which substantially destroy it, the whole scheme is defeated. The suspension of the sentence is not a fixed and final adjustment amounting to a right to be revoked only upon a violation of the condition upon which it is granted, because the statute expressly declares that 'the court may subsequently increase or decrease the probation period and may revoke or modify any condition of probation.' Clearly, this precludes the claim that the judgment is unenforceable until, after due process of law, it is adjudged that the condition of probation has been violated. The power of the court to revoke is not limited to when the conditions have been violated, but extends to the modification or revocation of the condition itself.

"There is nothing in the statute suggesting that the compliance with any condition, or the proof of any grounds, are necessary to authorize the revocation of an order suspending sentence. From the nature of the subject, the whole matter of granting and revoking suspensions must rest in the discretion of the court. This view of the matter finds support in People ex rel. [Forsyth] v. Court of Sessions, 141 N.Y. 288, 36 N.E. 386, 23 L.R.A. 856 [15 Am. Crim. Rep. 675], where O'Brien, J., speaking for the court, says: 'The power to suspend the judgment during good behavior, if understood as expressing a condition, upon the compliance with which the offender would be absolutely relieved from all punishment and freed from

454

the power of the court to pass sentence, is open to more doubt. The Legislature cannot authorize the courts to abdicate their own powers and duties or to tie their own hands in such a way that after sentence has been suspended they cannot, when deemed proper, and in the interest of justice, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled exercise of this power or the right to pass sentence according to the discretion of the court be made dependent upon compliance with some condition that would require the court to try a question of fact before it could render the judgment which the law prescribes. The statute must not be understood as conferring any new power. The court may suspend sentence as before, but it can do nothing to preclude itself or its successor from passing the proper sentence whenever such a course appears to be proper. This, we think, is all that the statute intends, and that was the only effect of the judgment. It is a power which the court should possess in furtherance of justice, to be used wisely and discreetly, and it is perhaps creditable to the administration of justice in such cases that while the power has always existed no complaint has been heard of its abuse.' * * *

"In exercising the powers conferred by the statute in question from the nature of the subject, courts must necessarily have a large discretion not only in respect of the grounds upon which they act, but in the method or procedure by which they ascertain facts and arrive at conclusions. They are not dealing with specific legal rights and are not bound by the standards of legal procedure which usually control judicial proceedings. This is comprehended within the very generally approved rule that an order suspending sentence may be revoked without granting the defendant a trial upon the facts. It logically follows that courts may ascertain facts upon which to act in any manner they see fit, and act upon them, provided only that their proceedings and conduct on the whole are not capricious or arbitrary or a manifest abuse of discretion."

In the case of Burns v. United States, supra [287 U. S. 216, 53 S. Ct. 155, 77 L. Ed. 266], Chief Justice Hughes said:

"First. Petitioner objects to the summary character of the proceeding. He urges that he was entitled to previous notice of specific charges of violation of the terms of probation and to a hearing upon such charges according to the established rules of judicial procedure. As opposed to the action sanctioned below he invokes principles announced in Hollandsworth v. United States [4 Cir.], 34 F. 2d 423, 428, and in certain decisions of state courts dealing with procedure under state probation laws. See State v. Zolantakis, 70 Utah 296, 259 P. 1044, 54 A.L.R. 1463, 1471, note.

"The Federal Probation Act (March 4, 1925, c. 521, 43 Stat. 1259, U.S.C., tit. 18, §§ 724-727, 18 U.S.C A. §§724-727), confers an authority commensurate with its object. It was designed to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable. United States v. Murray, 275 U.S. 347, 357, 358, 48 S. Ct. 146, 72 L. Ed. 309; H.R. Rep. No. 423, 68th Cong. 1st Sess. Probation is thus conferred as a privilege and cannot be demanded as a right. It is a matter of favor, not of contract. There is no requirement that it must be granted on a specified showing. The defendant stands convicted; he faces punishment, and cannot insist on terms or strike a bargain. To accomplish the purpose of the statute, an exceptional degree of flexibility in administration is essential. It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion. The provisions of the act are adapted to this end. It authorizes courts of original jurisdiction, when satisfied 'that the ends of justice and the best interests of the public, as well as the defendant, will be subserved,' to suspend the imposition or execution of sentence and 'to

place the defendant upon probation for such period and upon such terms and conditions as they may deem best.'

"There is no suggestion in the statute that the scope of the discretion conferred for the purpose of making the grant is narrowed in providing for its modification or revocation. The authority for the latter purpose immediately follows that given for the former, and is in terms equally broad. 'The court may revoke or modify any condition of probation, or may change the period of probation.' There are no limiting requirements as to the formulation of charges, notice of charges, or manner of hearing or determination. No criteria for modification or revocation are suggested which are in addition to, or different from, those which pertain to the original grant. The question in both cases is whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant. The only limitation, and this applies to both the grant and any modification of it, is that the total period of probation shall not exceed five years. Act of March 4, 1925, § 1 * * *.

"Such procedural provisions as the act contains harmonize with the view that the continuance of the probation, as well as the grant of it, rests in the court's discretion. The probation officer, when directed by the court, must report to the court with a statement of the conduct of the probationer. 'The court may thereupon discharge the probationer from further supervision and may terminate the proceedings against him, or may extend the probation, as shall seem advisable.' Id., § 2 * * *. The broad authority of the court remains unimpaired. At any time within the probation period, the probationer may be arrested, either with or without warrant, and thereupon he 'shall forthwith be taken before the court.' Also, after the probation period has expired, but within the maximum period for which the defendant might originally have been sentenced, the court may issue a warrant and cause the defendant to be arrested and brought before it. 'Thereupon the court may revoke the probation or the

suspension of sentence, and may impose any sentence which might originally have been imposed.' Id.

"The duty placed upon the probation officer to furnish to each probationer under his supervision 'a written statement of the conditions of probation' and to 'instruct him regarding the same' (Id., § 4 * * *) cannot be deemed to restrict the court's discretion in modifying the terms of probation or in revoking it. The evident purpose is to give appropriate admonition to the probationer, not to change his position from the possession of a privilege to the enjoyment of a right. He is still a person convicted of an offense, and the suspension of his sentence remains within the control of the court. The continuance of that control, apparent from the terms of the statute, is essential to the accomplishment of its beneficent purpose, as otherwise probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice. See Campbell v. Aderhold, D.C., 36 F. 2d 366, 367; United States v. Mulligan, [2 Cir.], 48 F. 2d 93, 94; Jianole v. United States, [8 Cir.], 58 F. 2d 115, 117; Commonwealth v. McGovern, 183 Mass. 238, 66 N.E. 805; People ex rel. Pasco v. Trombly, 173 App. Div. 497, 499, 160 N.Y.S. 67; Richardson v. Commonwealth, 131 Va. 802, 810, 811, 109 S.E. 460; People v. Dudley, 173 Mich. 389, 392, 395, 138 N. W. 1044; People v. Sanders, 64 Cal. App. 1, 220 P. 24.

"The question, then, in the case of the revocation of probation, is not one of formal procedure either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. The Styria v. Morgan, 186 U.S. 1, 9, 22 S. Ct. 731, 46 L. Ed. 1027. It takes account of the law and the particular circumstances of the case and is 'directed by the reason and conscience of the judge to a just result.' Langnes v. Green, 282 U. S. 531, 541, 51 S. Ct. 243, 247, 75 L. Ed. 520. While proba-

tion is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice."

For further discussion of the federal probation law, see Escoe v. Zerbst, 295 U. S. 490, 55 S. Ct. 818, 79 L. Ed. 1566.

It should be noted that the broad term "suspended sentence" is used quite generally by the text writers and the various opinions to apply both to the case where the imposition of the sentence itself is suspended and to those cases where the sentence is pronounced, but the execution of the sentence is suspended. In Oklahoma, in accordance with our statute, the sentence is pronounced, and at the same time and as a part of the sentence the court may in its own discretion make provision that the execution of the sentence be suspended upon the conditions set forth in the statute.

A consideration of our statute shows that it requires the defendant to report to the judge at each subsequent term during the pendency of the judgment "or when required by the court or judge," and prove to the satisfaction of said judge that defendant has not violated any law and has been a quiet, peaceful, and law-abiding citizen. The statute further provides that if it be made to appear to said judge that said person so released has been guilty of a violation of any law after his release or is habitually associating with lewd or vicious persons or is indulging in vicious habits, "in that event said court shall cause a warrant to be issued for said person, and he shall be delivered forthwith to the place of confinement to which originally sentenced."

Only those persons coming within the terms of the statute are eligible for a suspended sentence, but they have no right to demand the same, and it may not be

granted to them except at the discretion of the court. Martin v. State, 67 Okla. Cr. 390, 94 P. 2d 270.

Nowhere in the statute appears any provision for notice to be given to the accused or for the filing of an accusation or for a hearing. The statute itself authorizes the court, when he is satisfied that the defendant has violated the conditions of the suspended sentence, to forthwith cause the defendant to be delivered to the place of confinement to which originally sentenced.

As hereinabove noted, the power to suspend the execution of a sentence did not exist at common law, but the authority so conferred must be governed exclusively by the statute involved. There is no ambiguity in our statute. The hearing may be of a summary character. We suggest, however, that the better practice would be for the trial judges to require county attorneys to file a written accusation against accused, setting forth the conditions of the suspended sentence which are alleged to have been violated. The statute does not require this, however, but to avoid arbitrary action such a procedure should be followed. The trial judge, however, may find instances in which the accused fails to make the reports which are required under the terms of the suspended sentence, and a literal interpretation of the statute in such instance would authorize the court forthwith, without a hearing, to issue a bench warrant for the defendant and direct the sheriff to commit him to imprisonment.

We are not inclined to go as far as some of the courts of last resort have gone in sustaining the power of the trial court to revoke a suspended sentence. We do, however, follow the reasoning of Chief Justice Hughes in which he states that the revocation of probation, or in our case of suspension of a sentence, should be a matter addressed to the sound judicial discretion of the trial judge.

We quote from Judge Hughes, in Burns v. United States, supra, as follows:

"The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action."

The case of Varela v. Merrill, supra, reviews the various authorities from other jurisdictions, including many of the cases hereinabove cited, and the Arizona Supreme Court denied the petition for writ of habeas corpus. The syllabus, as set out in the Pacific Reporter, is as follows:

"1. The language of statute empowering court to suspend sentences is important in determining extent of court's power, since such power did not exist at common law. * * *

"2. Where all constitutional and statutory guarantees have been observed in criminal prosecution, requirements of due process are fully satisfied, presumption of innocence is overcome, and hence suspension of sentence is not a matter of right but purely within trial court's discretion as respects both form and substance. * * *

"3. When suspension of convicted defendant's sentence is revoked under statute, he need not be brought before court nor given hearing, though he must appear when new sentence is pronounced. * * *

"4. Where record shows affirmatively that trial judge has ordered revocation of suspension of sentence and has pronounced sentence in defendant's presence, there is a conclusive presumption that trial judge had reason to believe, as required by statute, that defendant was violating conditions of probation, was engaging in criminal practices, or had become abandoned to improper associates or a vicious life. * * *

"5. In habeas corpus proceeding by prisoner, attacking trial court's revocation of suspension of his sentence, record showing that court revoked suspension of sentence

and that prisoner was present when he was sentenced is sufficient to sustain trial court's action. * * *

"6 : On appeal from order denying habeas corpus, sought on ground of alleged impropriety of trial court's revocation of suspension of prisoner's sentence, reviewing court would not consider objections to conditions imposed at time of suspension of sentence, in absence of showing of trial court's specific grounds for revocation. * * *

"7. A prisoner who failed to ask permission to be heard or to present evidence when suspension of his sentence was revoked, though prisoner was then present, thereby waived alleged right thereto. * * *

"8. Where trial court, at time of revoking suspension of prisoner's sentence, informed prisoner that he had violated conditions of his probation and asked prisoner if he had anything to say why sentence should not be pronounced, prisoner was thereby given sufficient opportunity to be heard."

If it is shown to this court that a trial judge acts in an arbitrary manner in revoking a suspended sentence or through mere whim or caprice of the judge, we would unhesitatingly set aside such order of revocation.

The Arizona statute is similar to our statute in that no provision is made for an application to be filed to revoke the suspended sentence, or notice to be given, or for a hearing of any kind.

Concerning the question of the failure to file an accusation against the accused and have a hearing, the Arizona court quoted from the case of People v. Dudley, supra, as follows:

"2. * * * It is here claimed that the statute is unconstitutional because in the matter of the termination and revocation of the probation no provision is made for benefit of counsel, for the right to be confronted with witnesses, and the right of trial by jury. These rights are only given by the Constitution in criminal proceedings.

The violation of the terms of probation is not a crime necessarily, and is not treated as a crime, but is rather in the nature of a breach of contract. As we have already said, the respondent was all of the time in the care and custody of the probation officer, acting under the direction of the court. When probation was granted, respondent agreed to its terms, and fully understood that, for certain misconduct, his probation would be revoked and terminated. This is of the very essence of the plan. When brought before the court for sentence, he is not charged with a new crime, but merely with the violation of his agreement with the court. In no sense can this be said to be a criminal prosecution. The respondent was granted his probation subject to this liability. A similar feature appears in the law of other states, and has, in so far as we have been able to find, been sustained when questioned."

For other cases sustaining this view reference is made to Brozosky v. State, 197 Wis. 446, 222 N.W. 311; Calloway v. State, 201 Ark. 542, 145 S.W. 2d 353; People v. Lippner, 219 Cal. 395, 26 P. 2d 457; People v. Wheeler, 349 Ill. 230, 181 N.E. 623; People ex rel. Pasco v. Trombly, 173 App. Div. 497, 160 N.Y.S. 67; State ex rel. v. Wall, 189 Minn. 265, 249 N. W. 37; McLemore v. State, 170 Miss. 641, 155 So. 415.

The cases cited by petitioner are based upon the theory that the grant of a suspended sentence confers upon the defendant a positive, substantial right which he may plead in the same manner and to the same extent as his right to be considered innocent of the original crime of which he has been convicted until a jury has passed upon the matter by all of the forms prescribed by law.

We follow what we consider the better rule in the interpretation of our statute, that the suspension of the execution of the sentence is a matter of grace, expressly ordered by the Legislature, to be in the discretion of the trial judge, with the revocation of such suspension equally

within his discretion, subject to the right of the accused to apply to this court for relief if it can be shown that the court's action was arbitrary or governed solely by whim or caprice of the judge, without a legal foundation.

Beneficent results could not be secured under our suspended sentence law if every accused was entitled to a trial to determine whether his suspended sentence should be revoked. Without doubt, a conscientious judge in many instances would be deterred in his desire to aid in the rehabilitation of a convicted person if we were to hinge the statute with technicalities and difficulties incident to a revocation. The Legislature has wisely charged the court with the duty of determining in the first instance whether a defendant shall be given a suspended sentence, and by the same statute it clearly vests in the court the power to determine in his own sound judicial discretion when such suspension of execution of sentence should be terminated. The vesting of such power in the court does not deprive the defendant of any of his constitutional rights. No convicted person has a constitutional right to produce proof to try out the issue of what his punishment shall be. That question must be determined by society, which in turn has vested that power in the courts.

Applying the conclusions above to the case at bar, we find that the order revoking the suspended sentence recites that the state had filed a motion to set aside and revoke such suspended sentence, that the matter was properly set for hearing, the defendant being present and fully advised of his rights therein. The order further recites that the court was advised and is satisfied from the evidence that the defendant has violated the terms and conditions of the order of suspension made on the 20th day of July, 1935. There are no allegations of fact in the petition filed herein sufficient in law to overthrow the

presumption of regularity carried with this order, and for that reason we are of the opinion that the demurrer of the Attorney General to the petition for writ of habeas corpus should be sustained and the petition denied.

It is so ordered.

BAREFOOT, P. J., concurs. DOYLE, J., absent and not participating.