[Crim. No. 1202.   Third Appellate District.—March 18, 1932.]

In the Matter of the Application of D. O. YOUNG for a Writ of Habeas Corpus.

Ranse R. Sischo for Petitioner.

Stephen P. Galvin for Respondent.

THOMPSON (R. L.), J. — The petitioner was convicted of vagrancy December 22, 1931, in the Justice's Court of Township Number Two, Merced County. He was sentenced to six months' imprisonment in the county jail. His sentence was suspended and he was thereupon released on probation on condition that he would leave Merced. He failed to do so. Without warrant or formal charge of violating his parole, he was re-arrested December 28th in Merced and taken before the justice of the peace who tried the cause. His probation was revoked and he was sentenced to the county jail for the term of six months. In the original proceeding the docket recites: "December 28, 1931; Suspended sentence revoked and defendant committed to the county jail for six months." The petitioner is now held in custody pursuant to the terms of his commitment.

The petitioner contends he was illegally arrested without a warrant, and that he is unlawfully restrained of his liberty for the reason that his suspended sentence was revoked without a trial upon the charge of violating the terms and conditions of his probation. It is asserted that the revoking of a suspended sentence, without the privilege of trial, violates the constitutional inhibition against depriving one of his liberty without due process of law.

Under the provisions of section 1203 of the Penal Code "The court, judge or justice thereof, . . . may suspend the imposing, or the execution of the sentence . . . for such period of time not exceeding the maximum possible term of such sentence, . . . and upon such terms and conditions as it shall determine." This section further provides that

a defendant shall be placed under the supervision of the probation officer during the time his sentence is suspended.

Neither the judgment of commitment nor the order suspending sentence are void for failure to formally direct that the prisoner be placed under the supervision of the probation officer. (*In re Giannini,* 18 Cal. App. 166 [122 Pac. 831].)

The arrest of a probationary prisoner for breach of the terms upon which he is released may be made without warrant. Subdivision 2 of section 1203, *supra,* provides: "At any time during the probationary period . . . any probation or peace officer may without warrant, or other process, at any time until the final disposition of the case, rearrest any person so placed on probation . . . and bring him before the court." There is therefore no merit in the petitioner's claim that he was unlawfully arrested without warrant.

The petitioner was not entitled to a trial or even a formal hearing upon the revocation of his probation. The statute does not contemplate such trial or formal hearing as a prerequisite to the termination of probation. Moreover, the prisoner waived any informality of procedure by failing to object thereto, when he was taken before the court for the purpose of revoking his probation.

In *State* v. *Charles,* 107 S. C. 413 [93 S. E. 134], it was held that where the defendant is present in court, or is represented by counsel, at the time the order suspending his sentence is revoked, and makes no application to be heard thereon, he waives his right to complain of any informality in the procedure. To the same effect, the court said in *Sylvester* v. *State,* 65 N. H. 193 [20 Atl. 954]:

"The order granting a *mittimus* was not a judgment. It was a mere finding of fact involved in the interlocutory question whether the execution of the judgment should be further postponed. On this question he was no more entitled to another complaint and warrant, another arrest, a formal summons, personal plea, appeal, or jury trial, than he would have been on a denial of his motion for a temporary stay of *mittimus.* He had an opportunity to be heard, and the evidence was competent in support of the motion."

Subdivision 2 of section 1203 of the Penal Code further provides, upon bringing the prisoner before the court hav-

ing jurisdiction of the cause, the judge or justice "may thereupon revoke and terminate such probation, if the interests of justice so require, and if the court in its judgment, shall have reason to believe from the report of the probation officer, or otherwise, that the person so placed upon probation is violating any of the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates or a vicious life. . . . If the judgment has been pronounced and the execution thereof has been suspended, the court may revoke such suspension, whereupon the judgment shall be in full force and effect, and the person shall be delivered over to the proper officer to serve his sentence."

Many well-considered authorities hold that a statute may lawfully dispense with notice, trial or formal hearing on the proceeding for revocation of probation for the violation of the terms thereof. (*Fuller* v. *State,* 122 Ala. 32 [82 Am. St. Rep. 1, 45 L. R. A. 502, 26 South. 146]; *In re Patterson,* 94 Kan. 439 [L. R. A. 1915F, 541, 146 Pac. 1009]; *Kennedy's Case,* 135 Mass. 48; *People* v. *Dudley,* 173 Mich. 389 [138 N. W. 1044]; *Owen* v. *Smith,* 89 Neb. 596 [131 N. W. 914]; *Pagano* v. *Bechly,* 211 Iowa, 1294 [232 N. W. 798].)

It will be observed from the language of section 1203, *supra,* that the court is authorized to revoke the order for probation if there is "reason to believe from the report of the probation officer or otherwise", that the prisoner has violated the terms of his probation. The procedure for revoking probation is wisely made informal. The statute does not contemplate a trial by jury or a formal hearing upon that issue. The authority to revoke a prisoner's probation does not even depend upon his violation of the specified conditions of probation. The order suspending his sentence may be set aside if the court "has reason to believe from the report of the probation officer, or otherwise", that he is associating with lawless or improper persons or that he is engaging in criminal practices. The continued enjoyment of probation may depend upon the effect which the prisoner's liberty may have upon the peace or morals of society. A breach of the terms of probation and the unfitness of the prisoner to enjoy his liberty are not required to be established beyond a reasonable doubt according to the rule which prevails in ordinary criminal proceedings. It is only

necessary that the judge shall have reason to believe them to be true from the report of the probation officer, or otherwise. No particular source, manner or degree of proof is required by statute. It may not be presumed a judge will arbitrarily revoke probation without reason therefor. Pursuant to our statute, however, the judge or justice having jurisdiction of the cause may, in the exercise of sound discretion, based upon facts presented in an informal fashion, from which he has reason to believe the prisoner has violated his probation or is unfit to be at large, revoke the order suspending sentence and commit him to jail.

This informal procedure does not have the effect of depriving one of his liberty without due process of law. This inhibition of the Constitution has no application to the revocation of probation. (*In re Patterson,* 94 Kan. 439 [L. R. A. 1915F, 541, 146 Pac. 1009] ; *In re Hall,* 100 Vt. 197 [136 Atl. 24].)

In the case of *Brozosky* v. *State,* 197 Wis. 446 [222 N. W. 311, 312], the defendant was convicted, sentenced and paroled. Two months later he was brought before the court for violation of his parole. After a summary hearing his probation was revoked and he was committed to prison. The prisoner contends he was deprived of his liberty without trial or due process. Construing a statute in language precisely the same as section 1203 of the California Penal Code, so far as subdivision 2 thereof is concerned, the court said:

"This statute, which in effect became a part of the judgment by which defendant was placed on probation, expressly authorized the court to sentence at any time before the end of the period of probation. . . . Beneficent results could not be secured under the probation law if every probationer was entitled to a trial—perhaps a jury trial—to determine whether his probation should be terminated. The legislature has wisely charged the court with the duty of determining whether a defendant shall be placed upon probation in the first place, and given it the power to determine in a summary way whether that probation shall be terminated. The vesting of such power in the court does not deprive the defendant of any of his constitutional rights. When one has been found guilty of an offense against society, no constitutional provision guarantees him the right to produce proof or to try out the issue of what his punishment shall be. That is

a question which must be determined by society, which has vested that power in the courts.''

In *Pagano* v. *Bechly,* 211 Iowa, 1294 [232 N. W. 798, 799], the defendant was convicted, sentenced and paroled. His probation was revoked without notice to him. The statute authorized the revoking of probation ''at any time without notice''. It was contended this deprived the prisoner of his liberty without due process of law. The court said:

''These sections of the statute, which necessarily become a part of the judgment entry, amount to this: The court says to the defendant: 'I will suspend your sentence during good behavior, but reserve the power to revoke this suspension of sentence and parole at any time I may see fit without notice to you.' It is the claim of the plaintiff that he has vested rights by reason of this suspension of sentence and parole of which he cannot be deprived under the Constitution without notice and opportunity to be heard.''

Comparing the effect of a pardon with that of the suspending of sentence, the court further says:

''One is equally as much a matter of grace, favor, and forgiveness as the other, and when the defendant . . . accepts the grace and forbearance . . . he takes it with the conditions and limitations that go with it. . . . Being a matter of grace and forbearance, the defendant acquired no vested rights, and therefore, under the statutory provisions, he would not be entitled to notice and opportuniy to be heard.''

The constitutional guaranty of due process is fulfilled when the prisoner is originally convicted of the offense for which he is suffering punishment. If the violation of probation be considered a separate offense entitling one to the application of the doctrine of due process, then the prisoner would be entitled to require a formal written charge of the offense, a trial by jury and an appeal from an unfavorable verdict. Clearly the statute requires no such absurdity. (*People* v. *Dudley,* 173 Mich. 389 [138 N. W. 1044].) This would defeat the purpose of probation. A suspended sentence is a mere incident to the imposition of a penalty for violating law. It is a wholesome means of encouraging an offender to become a law-abiding citizen. It is awarded in the sound discretion of the court. A violation of the terms of probation is not deemed to be a separate offense for which

one may be punished independently of his original sentence. The breach of probation is inseparably associated with the original sentence. It consists of mere failure to conform to the conditions upon which temporary freedom is granted. Some authorities declare that an order for probation is not a judgment which creates vested rights, but is in the nature of a contract pursuant to the terms of which a prisoner accepts conditional liberty, with the tacit consent that his probation may be forfeited by his violation of the terms and conditions thereof. Upon the revocation of probation, no new penalty is administered, but the formal sentence is then restored to its original efficacy. The very nature and purpose of probation refutes the assertion that its violation becomes an offense separate from the original one so as to require a formal conviction thereof. Such construction would destroy the salutary benefits of probation.

In response to the contention that the revocation of a suspended sentence, without previous notice or hearing, deprives the accused of his liberty without due process of law, the court in *Ex parte Patterson*, 94 Kan. 439 [L. R. A. 1915F, 541, 146 Pac. 1009, 1011], says:

"The statute expressly provides that the court may grant the parole on such conditions and under such restrictions as it may see fit to impose. In its discretion it may attach any conditions to the parole that are not immoral, illegal, or impossible of performance, and, as the authority is to be exercised by a court or judge, it is expressly provided that the parole may be terminated at any time, and the convict remanded to prison without notice to him. It is competent for the legislature to provide that the court may, upon information that is satisfactory to it, revoke the parole, and summarily remand the convict to prison to serve out a sentence legally imposed. The failure of the convict to observe the conditions of a parole is not a new offense, and the revocation of the parole and the returning of the convict to prison is not an added punishment for the offense of which he was convicted, nor a punishment for any other offense, but is rather a disciplinary regulation of prison management in carrying out the sentence of the law already imposed, and growing out of the effort to ameliorate the condition of the convict. There was therefore no occasion for the making of an affidavit before petitioner's rearrest, nor any necessity for

the filing of an information or indictment, nor for providing a trial by a jury. The rights which he is insisting upon, and which are guaranteed to him by the Constitution, were accorded to him when he was arrested and prosecuted for the offense of which he was convicted, and for which he is now imprisoned.''

There are cases from other jurisdictions which hold that in the absence of statutory enactments to the contrary a prisoner is entitled to a formal trial upon the issue of his alleged violation of probation, before it may be revoked. The case of *State* v. *Zolantakis,* 70 Utah, 296 [54 A. L. R. 1463, 259 Pac. 1044], is relied upon by the petitioner to uphold his claim of a right to trial on the question of his violation of probation. The case does so hold. In that state there was no statute authorizing the revoking of a suspended sentence. The opinion was rendered by a divided bench. Three justices dissented from the prevailing opinion. This case does not furnish authority which is controlling in the present proceeding in view of the clear import of the California statute affecting probation.

In 16 C. J. 1335, section 3141, it is said: ''When sentence has been suspended during the good behavior of defendant, either with or without statutory authority, the court has power to revoke such order and to impose the sentence without granting defendant a trial as to whether or not he has violated such condition.''

This text is supported by several authorities. (*Sylvester* v. *State,* 65 N. H. 193 [65 Atl. 954]; *People* v. *Monroe Co.,* 141 N. Y. 288 [23 L. R. A. 856, 36 N. E. 386]; *People ex rel. Pasco* v. *Trombly,* 173 App. Div. 497 [160 N. Y. Supp. 67]; *People* v. *Goodrich,* (Sup.) 149 N. Y. Supp. 406.)

In *State* v. *Everitt,* 164 N. C. 399 [47 L. R. A. (N. S.) 848, 79 S. E. 274], it was held a defendant was not entitled to a jury trial to determine whether he had violated the conditions upon which his sentence had been suspended. The court said:

''Whether or not he had so demeaned himself [as to forfeit his probation] was not an issue of fact to be submitted to a jury, but a question of fact to be passed upon by the court. It was a matter to be determined by the sound discretion of the court, and the exercise of that discretion, in the absence of gross abuse, cannot be reviewed here.''

In *People ex rel. Pasco* v. *Trombly, supra,* it was held that the court, at will, may revoke a suspended sentence and commit the prisoner to serve his term. It was there said: ''A suspension of sentence, and a revocation thereof, are merely within the discretion of the court.''

The authority in conflict with the foregoing principle which exists in some jurisdictions is accounted for by the fact that their statutes specifically provide that the revocation of a suspended sentence may be made only upon notice and formal hearing thereof. The California statute implies just the contrary.

We are of the opinion the petitioner was not entitled to a formal trial on the question of his violation of probation.

The writ is denied, and the prisoner is remanded.

Preston, P. J., and Plummer, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 14, 1932.