[Civil No. 3936.  Filed December 20, 1937.]

[74 Pac. (2d) 569.]

# PETE VARELA, Appellant, v. ROY MERRILL, Sheriff of Maricopa County, Appellee.

Mr. Marshall W. Haislip, for Appellant.

Mr. John W. Corbin, County Attorney, and Mr. Lin H. Orme, Jr., His Deputy, for Appellee.

LOCKWOOD, J.—This is an appeal from an order of the superior court of Maricopa county, denying a petition for a writ of *habeas corpus*. The facts, as shown by the record, may be stated as follows:

On the 24th of October, 1931, Pete Varela, hereinafter called petitioner, was convicted by a jury of the crime of rape. On November 17th petitioner appeared before the court for sentence, and the following order was made:

"It is the judgment of the court that you are guilty of rape as charged in the information. The passing of sentence committing you to the State Penitentiary at Florence, Arizona, is suspended for a period of ten years on condition that you conduct yourself in every particular as a law abiding citizen; that you pay within 90 days from this date into the Clerk of this Court the sum of $250.00 as and for the expenses incurred in the trial of this cause; that you support your wife and baby; that you report to the Adult Probation Officer at least once every ten days until further order of this Court in the manner he shall prescribe for you; that you do not leave the State of Arizona without permission of the Court."

On April 3, 1935, petitioner was brought into court, charged with a violation of the conditions of his probation, and he was ordered to comply with these conditions within 30 days. He was apparently again arrested, for the record shows that on May 17, 1937, he was released from custody. On July 31, 1937, a bench warrant was issued for his arrest, and on the 4th of September he was brought before the court, when the following proceedings are shown by the minutes to have occurred:

"September the 4th, 1937. State of Arizona *versus* Pete Varela, No. 11099. Defendant present. Order suspension of sentence in this case is revoked. Have you anything to say or legal cause to show why sentence should not be pronounced at this time. Defendant makes statement. It is the judgment of this Court that you are guilty of the crime of rape, a felony, as heretofore adjudged and that you shall be punished therefor by imprisonment in the State Penitentiary at Florence, Arizona, for a period of not less than five years nor more than five years and one month from the date of incarceration therein."

Thereafter a petition for *habeas corpus* was presented to the Honorable HOWARD C. SPEAKMAN, one of the judges of said court, and was heard on the 15th of September, when the petition was denied, and this appeal was taken.

It is apparently the position of petitioner that before a court may revoke an order suspending the pronouncing of a sentence, it must appear affirmatively from the record (a) that the conditions imposed in the suspension of sentence were such as the court was authorized to require, (b) that the petitioner be brought into court and given a hearing on the question of whether he has violated these conditions, and (c) that there must be sufficient evidence of such violation shown by the record to justify the court in finding that he has been guilty of a violation of the conditions.

It is the contention of the state (a) that a suspension of a sentence is a matter of grace, and not of right, and that the trial court may impose any conditions which tend towards the prevention of future crime by the defendant, or other persons, or provide for reparation by the defendant for the injury which he has caused by the crime, (b) that if the court, for any reason, believes thereafter that the defendant has either violated the conditions of his probation, or engaged in criminal practices in general, or become abandoned to improper associates, it may, without any formal trial or the taking of evidence in the ordinary manner, revoke the suspension of sentence, and proceed to sentence the defendant for the crime for which he was originally convicted.

■ Questions of a similar nature to those involved in the present proceeding have been before the courts in many jurisdictions, and there is some conflict in the decisions. Generally they turn upon the language of the statute authorizing the suspension of sentence. This power did not exist in the court at common law, and the language of the particular statute, therefore, is very material as to the power conferred upon the court. Our statute on this subject is section 5105, Revised Code 1928, which reads, in part, as follows:

*"Suspending judgment; revocation; pronouncing judgment; discharge.* After plea or verdict of guilty, where discretion is conferred upon the court as to the extent of the punishment. . . . If it shall appear that there are circumstances in mitigation of the punishment, or that the ends of justice will be subserved thereby, the court shall have power, in its discretion, to place the defendant upon probation in the manner following: 1. The court, judge or justice thereof, may suspend the imposing of sentence and may direct that such suspension may continue for such period of time, not exceeding the maximum term of sentence, which may be imposed, and upon such terms and conditions as it shall determine, and shall place such person on

probation, under the charge and supervision of the probation officer of said court during such suspension. . . .

"At any time during the probationary term of the person released on probation, any probation officer may, without warrant or other process, at any time until the final disposition of the case, re-arrest any person so placed in his care and bring him before the court, or the court may, in its discretion, issue a warrant for the re-arrest of any such person and may thereupon revoke and terminate such probation, if the interest of justice so requires, *and if the court, in its judgment shall have reason to believe* that the person so placed upon probation is violating the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates, or a vicious life. Upon such revocation and termination, the court may, if the sentence has been suspended, pronounce judgment at any time after the said suspension of the sentence within the longest period for which the defendant might have been sentenced." (Italics ours).

It will be noticed upon a careful reading of this section that the suspension of sentence is not a matter of right under any circumstances or in any instance, but is purely a matter of discretion in the trial court. As has been held in many cases, it is a matter of grace, and not of right. In the case of *In re Keene,* 47 Ariz. 191, 54 Pac. (2d) 791, 792, we said:

"Section 5105, *supra* [R. C. 1928] under which the court acted in this matter, is modeled somewhat after the California statute. Section 1203, Penal Code. Apparently it was copied from California with some omissions."

The California courts have construed section 1203 of the Penal Code of California repeatedly. In the case of *In re Young,* 121 Cal. App. 711, 10 Pac. (2d) 154, 156, the court said:

"It will be observed from the language of section 1203, *supra,* that the court is authorized to revoke the

order for probation if there is 'reason to believe from the report of the probation officer, or otherwise,' that the prisoner has violated the terms of his probation. The procedure for revoking probation is wisely made informal. The statute does not contemplate a trial by jury or a formal hearing upon that issue. The authority to revoke a prisoner's probation does not even depend upon his violation of the specified conditions of probation. The order suspending his sentence may be set aside if the court 'has reason to believe from the report of the probation officer, or otherwise,' that he is associating with lawless or improper persons, or that he is engaging in criminal practices. The continued enjoyment of probation may depend upon the effect which the prisoner's liberty may have upon the peace or morals of society. A breach of the terms of probation and the unfitness of the prisoner to enjoy his liberty are not required to be established beyond a reasonable doubt according to the rule which prevails in ordinary criminal proceedings. It is only necessary that the judge shall have reason to believe them to be true from the report of the probation officer, or otherwise. No particular source, manner or degree of proof is required by statute. It may not be presumed a judge will arbitrarily revoke probation without reason therefor. Pursuant to our statute, however, the judge or justice having jurisdiction of the cause may, in the exercise of sound discretion, based upon facts presented in an informal fashion, from which he has reason to believe the prisoner has violated his probation or is unfit to be at large, revoke the order suspending sentence and commit him to jail.''

See, also, *In re Hall,* 63 Cal. App. 775, 220 Pac. 23; *People* v. *Blankenship,* 16 Cal. App. (2d) 606, 61 Pac. (2d) 352. In the case of *People* v. *Dudley,* 173 Mich. 389, 138 N. W. 1044, 1047, the court said:

''2. . . . It is here claimed that the statute is unconstitutional because in the matter of the termination and revocation of the probation no provision is made for benefit of counsel, for the right to be confronted with witnesses, and the right of trial by jury. These rights are only given by the Constitution in criminal

proceedings. The violation of the terms of probation is not a crime necessarily, and is not treated as a crime, but is rather in the nature of a breach of contract. As we have already said, the respondent was all of the time in the care and custody of the probation officer, acting under the direction of the court. When probation was granted, respondent agreed to its terms, and fully understood that, for certain misconduct, his probation would be revoked and terminated. This is of the very essence of the plan. When brought before the court for sentence, he is not charged with a new crime, but merely with the violation of his agreement with the court. In no sense can this be said to be a criminal prosecution. The respondent was granted his probation subject to this liability. A similar feature appears in the law of other states, and has, in so far as we have been able to find, been sustained when questioned. [Citing cases]. This respondent had not been set at liberty, under the pardon of the executive. He was not a 'free man' within the meaning of the language used in *People* v. *Moore,* 62 Mich. 496, 29 N. W. 80, but was all of the time in the custody of the probation officer awaiting sentence in a certain contingency. We think that the cases are readily distinguished. We are of the opinion that there is no merit in these assignments.

''3. The same considerations apply to the sixth and seventh assignments of error. Respondent has not been deprived of his liberty without due process of law. When he pleaded guilty to the information filed against him, he might have been sentenced at once. It is only by the mercy of the law that he was given probation. If by the violation of the terms of his probation he is called before the court for sentence for the crime of which he had freely pleaded guilty, it cannot be said that he is deprived of his liberty without due process of law.''

In *Fuller* v. *State,* 122 Ala. 32, 26 So. 146, 148, 82 Am. St. Rep. 17, 45 L. R. A. 502, the court used the following language:

''But it is insisted that this statute, in so far as it undertakes to authorize the governor to determine that

the condition of the parole has not been complied with, and the summary arrest of the convict thereupon by the direction of the governor, and his summary return or remandment to servitude or imprisonment under the sentence, is violative of organic guaranties of jury trial, that no warrant shall be issued to seize any person without probable cause, supported by oath or affirmation, etc. This position takes no account of the fact that the person being dealt with is a convict, that he has already been sezed in a constitutional way, been confronted by his accusers and the witnesses against him, been tried by the jury of his peers secured to him by the constitution, and by them been convicted of crime, and been sentenced to punishment therefor. In respect of that crime and his attitude before the law after conviction of it, he is not a citizen, nor entitled to invoke the organic safeguards which hedge about the citizen's liberty, but he is a felon, at large by the mere grace of the executive, and not entitled to be at large after he has breached the conditions upon which that grace was extended to him. In the absence of this statute, a convict who had broken the conditions of a pardon would, if there were no question of his identity or the fact of breach of the conditions, be subject to summary arrest, and remandment, as matter of course, to imprisonment, under the original sentence by the court of his conviction, or any court of co-ordinate or superior jurisdiction,— a purely formal proceeding. If the person arrested denied his identity with the convict sought to be remanded, he might be entitled to a jury trial on that issue alone. If he denied only the alleged breach of the conditions of his enlargement, he would not be entitled to a jury on that issue, but it would be determinable in a summary way, by the court before whom he is brought. But the statute supervenes to avoid the necessity for any action by the courts in the premises. The executive clemency under it is extended upon the conditions named in it, and he accepts it upon those conditions. One of these is that the governor may withdraw his grace in a certain contingency, and another is that the governor shall himself determine when that contingency has arisen. It is as if the convict, with full competency to bind himself in

the premises; had expressly contracted and agreed that, whenever the governor should conclude that he had violated the conditions of his parole, an executive order for his arrest and remandment to prison should at once issue, and be conclusive upon him."

Petitioner's position is apparently supported by a number of cases which he has cited in his brief. In the case of *Escoe* v. *Zerbst,* 295 U. S. 490, 55 Sup. Ct. 818, 819, 79 L. Ed. 1566, it was held that, when the federal court suspended the execution of the sentence pronounced on the defendant, such order could not be revoked without a hearing, but it appears in that case that the statute regulating such matters expressly provided that the probationer must be arrested and brought before the court for a hearing, and that the suspension of the execution of sentence was set aside in his absence, and he was thereafter arrested and taken directly to serve the term of imprisonment provided by the sentence. The court said:

"Under the statute as amended as well as in its original form, the probationer 'shall forthwith be taken before the court.' This mandate was disobeyed. The probationer, instead of being brought before the court which had imposed the sentence, was taken to a prison beyond the territorial limits of that court and kept there in confinement without the opportunity for a hearing. For this denial of a legal privilege the commitment may not stand.

"In thus holding we do not accept the petitioner's contention that the privilege has a basis in the Constitution, apart from any statute. Probation or suspension of sentence comes as an act of grace to one convicted of a crime, and may be coupled with such conditions in respect of its duration as Congress may impose. [Citing case.] But the power of the lawmakers to dispense with notice or a hearing as part of the procedure of probation does not mean that a like dispensing power, in opposition to the will of Congress, has been confided to the courts. The privilege is no less real because its source is in the statute rather

than in the Fifth Amendment. If the statement of the Congress that the probationer shall be brought before the court is command and not advice, it defines and conditions power. [Citing case.] The revocation is invalid unless the command has been obeyed."

■ It will be observed that nowhere in our statute is there any provision that a defendant must be brought before the court when the suspension of his sentence is revoked, nor that he is entitled to a hearing on the question, although of course he must appear when sentence is pronounced. In the case of *Howe* v. *State ex rel. Pyne,* 170 Tenn. 571, 98 S. W. (2d) 93, 94, it was held that, before a sentence whose execution had been suspended could be enforced, the defendant was entitled to a hearing, but it appears that the statute governing such matters expressly provided that a defendant should be given at least 10 days' notice, and that

"Upon the day fixed, the Trial Judge shall proceed to investigate the charges made against the defendant, and after a hearing at which the defendant may be present, may be represented by counsel and shall have the right to introduce testimony in his behalf thereon, the Trial Judge may enter such judgment upon the question of such charges as he may deem right and proper under the evidence adduced before him."

So far as we are able to ascertain there are three, and only three, jurisdictions which hold, in the absence of a statute expressly granting a right to notice and hearing, that the defendant is, as a matter of right, entitled to such hearing. The first to lay down this rule, in point of time, was the state of New Mexico. In the case of *Ex parte Lucero,* 23 N. M. 433, 168 Pac. 713, 715, L. R. A. 1918C 549, the court said:

"Upon principle it would seem that due process of law would require notice and opportunity to be heard before a defendant can be committed under suspended

sentence. The suspension of the execution of the sentence gives to the defendant a valuable right. It gives to him the right of personal liberty, which is one of the highest rights of citizenship. This right cannot be taken from him without notice and opportunity to be heard without invading his constitutional rights. Of course, if the terms of the suspension of the sentence are such as to leave open no queston of fact, as where it is provided that the sentence is suspended until the further order of the court in its discretion, it may be that no notice or hearing would be required. In such a case the court would retain the right to enforce the sentence at any time in its discretion, to which the defendant may be held to consent when he accepts the benefits of the court's leniency. Just how far, if at all, arbitrary action by the court might be inquired into even in such a case, it is not necessary or proper for us to decide, for we have no such case before us. Here the sentence was suspended during good behavior, which necessarily involves the determination of a question of fact, in which determination the defendant is entitled to be heard. In such a determination the defendant is not entitled to a jury trial any more than upon the allocution at the time of the original sentence, except in case he pleads want of identity of himself and the person originally sentenced, a state of affairs rarely arising.''

This rule was followed in the case of *State* v. *O'Neal*, 147 Wash. 169, 265 Pac. 175. And the same principle was applied in *State* v. *Zolantakis*, 70 Utah 296, 259 Pac. 1044, 1046, 54 A. L. R. 1463. The court therein said:

''The purpose of the law permitting the suspension of sentence is clearly reformatory. If those who are to be reformed cannot implicitly rely upon promises or orders contained in the suspension of sentence, then we may well expect the law to fail in its purpose. Reformation can certainly best be accomplished by fair, consistent, and straightforward treatment of the person sought to be reformed. It would therefore seem, both upon authority and principle, that when a sentence is suspended during good behavior, without

reservations, the person whose sentence is thus suspended has a vested right to rely thereon so long as such condition is complied with. The right to personal liberty is one of the most sacred and valuable rights of a citizen, and should not be regarded lightly. The right to personal liberty may be as valuable to one convicted of crime as to one not so convicted, and so long as one complies with the conditions upon which such right is assured by judicial declaration, he may not be deprived of the same. Such right may not be alternatively granted and denied without just cause.''

This last decision, however, was rendered by a divided court.

It will be seen upon examining the opinions in the three cases last cited that they are based impliedly, if not specifically, upon the theory that, when the pronouncing on the execution of sentence is suspended, it is a positive, substantial right conferred upon the defendant, which he may plead in the same manner and to the same extent as his right to be considered innocent of the original crime of which he has been convicted, until a jury has passed upon the matter according to all the forms prescribed by law. If this theory of the suspension of a sentence is correct, there is much merit in petitioner's position. In the states, however, which hold that the suspension of the pronouncing or execution of the sentence is merely a matter of grace, expressly stated by the legislature to be in the discretion of the trial judge, with the revocation of such grace equally within his discretion, it is universally held that, if all of the constitutional and statutory guaranties have been observed in the trial of the defendant for the crime of which he was convicted, the requirements of due process are fully satisfied, the presumption of innocence has been overcome, and future action is in the discretion of the trial judge, both in form and substance, except as ex-

pressly declared otherwise by the legislature. We think that this latter is the correct view of our statute. By it, the suspension of the sentence is expressly stated to be a matter within the discretion of the trial judge. There are no rules prescribed as to when this discretion shall be exercised, or as to what evidence is necessary to satisfy the trial judge that the case is a proper one for its exercise. Indeed, it would be almost impossible to present a case which would justify this court in finding that the trial court had abused its discretion in regard to whether sentence should be suspended or not. It is true that we have held in the case of *Redewill* v. *Superior Court,* 43 Ariz. 68, 29 Pac. (2d) 475, that the conditions imposed by the trial court upon a defendant, which he must observe if he does not wish to have the suspension of the sentence revoked, must be such that it can reasonably be said that they have some bearing upon the protection of society against future crimes by either the offender or some other person, or upon reparation by the defendant for the injury he has caused by the particular offense already committed. But, in that case, we in no manner limited the discretion of the judge as to how he should be satisfied that conditions legally imposed had been violated.

We hold, therefore, following what we consider the better rule, that since in Arizona the suspension of sentence is a matter of grace, and not of right, and its granting by the trial judge is purely a matter of discretion, and since the statute nowhere provides as to the character or *quantum* of the evidence necessary to satisfy him that a defendant has violated the conditions of his probation, that when the record shows affirmatively that the trial judge has ordered the suspension of sentence revoked and pronounced sentence, the defendant being present at such time of sentence there is a conclusive presumption that the trial judge

has, in the language of the statute, had "reason to believe that the person so placed upon probation is violating the conditions of his probation, or engaging in criminal practices, or has become abandoned to improper associates, or a vicious life." The record shows that the suspension of sentence was revoked by the court, and that the petitioner was present when he was sentenced. This is sufficient under our statute to sustain the action of the trial court on a petition for a writ of *habeas corpus*.

It is urged by petitioner that some of the conditions imposed at the time of his suspension do not come within the rule laid down in *Re Redewill, supra*. It is not necessary for us to pass upon that question for the record does not show whether the order of suspension was revoked because of the violation of any particular one of the specific conditions of the probation, or because the court believed the petitioner was engaging in criminal practices, or had become abandoned to improper associates, both of the latter being statutory causes for revocation, regardless of whether they were part of the conditions of the probation or not.

But, even were it necessary that defendant be given a hearing before the order suspending the sentence could be revoked, it appears affirmatively from the record that he was present at the time it was so revoked, and it does not appear that he asked permission to be heard or to present any evidence in his own behalf. This was, of course, a waiver of such a right if it did exist.

There was a great deal of evidence presented in the lower court at the hearing on the petition for a writ of *habeas corpus* and we think that the trial judge who heard that petition gave every opportunity to petitioner to present anything which might legally affect the situation, and many things which could

not. The court held, and we think correctly, even if we are to apply the rule laid down in *Ex parte Lucero, supra,* that the defendant was informed, at the time the order revoking the suspension of his sentence was entered, that he had violated practically every one of the conditions of his probation, and was asked if he had anything to say or legal cause to show why sentence should not be pronounced against him, and that this gave him every reasonable opportunity to be heard.

The order of the superior court of Maricopa county denying the petition for a writ of *habeas corpus* is affirmed.

McALISTER, C. J., and ROSS, J., concur.