[Crim. No. 3162.   Second Appellate District, Division Two.—May 22, 1939.]

THE PEOPLE, Respondent, v. MAX SILVERMAN, Appellant.

Max Silverman, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

WOOD, J.—Defendant was convicted at a trial by the court without a jury of the crime of issuing a check without sufficient funds.   Proceedings were suspended and he was placed on probation on November 27, 1934, for a period of five years. Probation was revoked on July 19, 1938, and defendant was

sentenced to the state penitentiary for the term prescribed by law. From this judgment he prosecutes this appeal.

Defendant contends that the evidence is insufficient to sustain the conviction. From the evidence introduced by the prosecution it appears that defendant was on and before October 28, 1933, staying at the Ambassador Hotel in Los Angeles and had incurred a large bill at the hotel. On the date mentioned he presented a check for the sum of $4,944.15 and received from the cashier of the hotel the sum of $1500 in cash, the difference being applied on defendant's bill at the hotel. The check, drawn on National Newark & Essex Bank of Newark, New Jersey, in favor of the Ambassador Hotel was signed by the defendant. On the printed check form after the words, Name of bank, appears in ink the name of the bank on which the check was drawn. Under the words, Name of bank, appears the printed word, Branch, and after the word, Branch, appears in parenthesis and in ink the words, Peter Baida. The check was forwarded to the payee bank by one of the Los Angeles banks and was returned marked "no account either party". The deposition of Emil Peter Barbata was received in evidence in which it appears that the deponent was a teller at the payee bank named in the check. He testified that no arrangement for credit had been made by defendant with the payee bank and that defendant did not have sufficient funds or credit with the bank to cover the amount of the check; that there was no account in the name of the defendant at the bank. The deponent further testified that a brother of the defendant had left with him personally sufficient funds to cover the amount of the check. These funds were later exhausted.

We are satisfied that the evidence is sufficient to sustain the conviction. Defendant unquestionably wrote a check drawn on a bank in which he had no funds or credit and received therefor cash from the hotel. Defendant argues that since he wrote the word, draft, on one corner of the instrument and inserted the words, Peter Baida, in the space designated for the branch of the bank, the instrument must be considered to be a draft and that it was not presented to the drawee. It is of little consequence whether the instrument be called a draft or a check for the code section covers both checks and drafts. The check was drawn on the bank and not

4

on any individual. Indeed, it appears that there is no such individual as Peter Baida and no branch of the bank bearing that name. It is to be noted that the witness Barbata testified that he had known defendant for several years and had had various business transactions with him, but regardless of these circumstances the defendant did not write the true name Barbata on the check, but instead wrote the words, Peter Baida, in the space on the check form on which directions were printed to insert the name of the branch.

In the information it is charged that defendant issued the check with intent to cheat and defraud C. C. Smith and National Newark & Essex Bank. Defendant now contends that there is a variance between the charge and the proof in that the check was cashed by the Ambassador Hotel and therefore the hotel company must be the party defrauded. C. C. Smith was the cashier at the hotel. Section 956 of the Penal Code is as follows: "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, or of the place where the offense was committed, or of the property involved in its commission, is not material." If the information charges the offense in such manner that the defendant is apprised of the act with which he is charged with sufficient certainty to enable him to make a defense thereto, if he is not misled by any statement contained in the information, and the transaction is so identified that the defendant, by a proper plea, may protect himself against another prosecution for the same offense, it must be held that the allegations are sufficient to sustain the conviction when an attack is made upon the ground of variance. It has been frequently held that convictions may be upheld notwithstanding the informations stated erroneous names as owners of stolen property. (*People* v. *Cloud,* 100 Cal. App. 792 [281 Pac. 79] ; *People* v. *Leong Quong,* 60 Cal. 107; *People* v. *Nunley,* 142 Cal. 105 [75 Pac. 676] ; *People* v. *Larrabee,* 113 Cal. App. 745 [299 Pac. 85].) The circumstances of the transaction which is the subject of this action are set forth in such manner that defendant was undoubtedly sufficiently informed of the charges to enable him to present any defense that he might have; and there is no question but that de-

fendant can by a proper plea defend himself from a subsequent prosecution for the same offense if occasion should arise.

Defendant contends that the court was without authority to revoke the probation which had been granted to him, basing his contention upon the fact that the court ordered him to make restitution of $4,944.15 to the Ambassador Hotel and of $150 to the county treasurer, the costs of extradition, without specifying when during the period of five years payment should be made. Although the court in granting probation authorized the probation officer to determine the amounts and times of the instalments the court specifically stated: "I think something ought to be done by him and through some of his friends and his own activity within the next 90 days. It will be small comparatively speaking, but we want some evidence of good faith on his part." No payment was made by defendant within the period of 90 days but, on the contrary, defendant disobeyed the order of his probation officer and remained out of the jurisdiction of the court without permission. It was necessary to send an officer to the East for the purpose of apprehending defendant and bringing him within the jurisdiction of the court after he had been placed on probation.

The matter of granting probation in the first place is within the sound discretion of the trial court. It has been referred to as "an act of grace and clemency, which may be granted by the court to a seemingly deserving defendant, whereby he may escape the extreme rigors of the penalty imposed by law for the offense of which he stands convicted". (*People* v. *Hainline,* 219 Cal. 532, 534 [28 Pac. (2d) 16].) In section 1203 of the Penal Code (1203.2 as amended) it is provided that the court is authorized to revoke an order for probation if there is reason to believe from the report of the probation officer or otherwise that the defendant had violated the terms of his probation. The discretion of the court to revoke an order of probation is "very broad". (*People* v. *Fields,* 131 Cal. App. 56 [20 Pac. (2d) 988].) No formal procedure is provided for presenting charges of violation of probation. The court may make an order revoking probation based upon facts presented in an informal charge from which the court has reason to believe that the defendant has violated his probation or is unfit to be at large. (*In re Young,*

121 Cal. App. 711 [10 Pac. (2d) 154].) We see no occasion for disturbing the order of the court.

The judgment is affirmed.

Crail, P. J., and McComb, J., concurred.