[Crim. No. 3661.   Second Dist., Div. One.   May 21, 1943.]

THE PEOPLE, Respondent, v. SANDRA ALEXANDER MARTIN, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

YORK, P. J.—By information, appellant was accused of ten counts of forgery and ten counts of grand theft, to which she entered her plea of "not guilty." On June 20, 1938, by

leave of the court, appellant withdrew her plea of "not guilty," pleaded "guilty" to the offenses charged in counts 1, 2 and 3 of the information and applied for probation. Thereafter appellant was sentenced as to said three counts to the California Institution for Women at Tehachapi, execution of said sentences was suspended and appellant was "placed on probation for a period of ten years under the following conditions: Defendant must serve the first nine months of her probationary period in the County Jail. Other counts are dismissed."

A report of probation officer regarding desertion of probationer was filed on August 31, 1942, and a bench warrant issued. At the hearing thereon had on September 29, 1942, the court found appellant had violated the terms of her probation and thereupon revoked the same, ordering her committed to Tehachapi in accordance with the judgment of July 19, 1938.

This appeal is prosecuted from the order revoking probation, on the ground that "there is no evidence that the appellant violated any of the conditions of her probation."

At the time the trial judge suspended the sentences and placed appellant on probation, he made the following order: "Now, these sentences will be suspended and the court is going to place you on probation for a period of ten years. Now, as a condition of probation the court is going to order that you serve nine months in the county jail of Los Angeles County. Further than that, the court is going to make as a condition of probation an order that you in no way, manner or form attempt to sell that knowledge that you have gained by reason of your employment with this motion picture actress to any newspaper syndicate or to any company whatsoever; in other words, you have to be impressed with the fact that you were hired as a private secretary of this lady, and as such every piece of information and knowledge that you have received in that capacity should be confidential. Now, unless you can prove to this court that that relationship as secretary and employer is going to continue in effect, and whatever knowledge you have gained of her intimate life will be kept secret by you, the court is going to see to it that the terms of your probation will be revoked and you will be sentenced to Tehachapi for the term prescribed by law. In other words, you have a suspended sentence to Tehachapi hanging over your head. If you violate any of the terms of your proba-

tion, that is where you are going to go. Now, do you understand that distinctly?''

At the hearing for revocation of probation, the court stated: ''Well, the defendant is before the court at this time by reason of a report from our Probation Department that she has violated the terms of her probation, not for one violation but for several violations. I take it, you gentlemen have had an opportunity to read over the very thorough investigation that our probation officer has filed in this case. . . .''
Counsel for appellant admitted that appellant had not reported to the probation officer as was required, and the court finally determined that the probation report also showed ''many other violations . . . such as leaving the State of California, using an assumed name, not notifying the probation officer where she was and then getting married. . . .'' Also, that appellant had given a false mailing address at Bakersfield; that she had never lived there, and had gone under assumed names.

Section 1203.2 of the Penal Code provides: ''At any time during the probationary period of the person released on probation in accordance with the provisions of these sections, any probation or peace officer may without warrant, or other process, at any time until the final disposition of the case, re-arrest any person so placed on probation under the care of a probation officer, and bring him before the court, or the court may in its discretion issue a warrant for the re-arrest of any such person and may thereupon revoke and terminate such probation, *if the interests of justice so require, and if the court in its judgment, shall have reason to believe* from the report of the probation officer, or otherwise, *that the person so placed upon probation is violating any of the conditions of his probation,* or engaging in criminal practices, or has become abandoned to improper associates or a vicious life. . . .'' (Emphasis added.)

Appellant urges that there is no competent evidence that she was engaging in criminal practices, or that she had become abandoned to improper associates or a vicious life; further, that ''the only authority of the probation officer, and of the court, was to show a violation or breach of the terms and conditions *imposed by the court* on the person, not any informal conditions imposed by the probation officer''; that when she was placed on probation the court imposed two conditions only, that she (1) serve nine months in the county

jail and (2) keep inviolate the secrets of her former employer; that since she kept both of these conditions, it was an abuse of discretion for the court to revoke her probation and commit her to Tehachapi for some other act or acts which were not forbidden by the court. (Emphasis included.)

The report of the probation officer in regard to appellant's alleged violation of probation and upon which the order of revocation was apparently based, recites: "That on October 27, 1939, appellant reported to the Probation Office that she had secured a position as secretary to the manager of Furnace Creek Inn at Death Valley, which would not necessitate her handling money; that she was going there under the name of Sandra Martin (having formerly requested permission to use the name of Gale Payne which permission was refused); and that she would keep in communication with the probation officer at all times; that appellant did report during that season and during the season of 1940 and to April, 1941, and mail was addressed to her at Furnace Creek under the name of Sandra Martin. On June 9, 1941, she advised the probation officer that she had secured employment as secretary to Roland Swaffield of Long Beach, where she remained until some time in September, 1941, when it was learned that she had been working there under the name of Gale Payne. When her said employer learned of her court record he suggested it might be less embarrassing for them both if she obtained other employment. Appellant then informed the probation officer in October, 1941, that she was returning to her former employment in Death Valley. Nothing further was heard from her until April, 1942, when in response to an inquiry from the probation officer addressed to appellant at Furnace Creek Inn, she apologized for not reporting, gave her address as 2205 Milvia Drive, Bakersfield, and offered as an excuse for her negligence the fact that her father had been ill in Baltimore and she had "dashed" East and brought him to Bakersfield where he had friends and where appellant had completed arrangements to go to work for an oil company. When no report was forthcoming the following month, the probation officer wrote asking for more detailed information with regard to appellant's whereabouts and when she had left Death Valley, etc., and after two weeks he received an undated letter from her in which she took exception to his questioning her movements and particularly to a request that she come to the Los An-

geles Probation Department for a personal interview. In this letter appellant stated: "I am not working, because I have home duties to attend to. My father cannot be left alone just now. I am sorry that I have been negligent in sending in those silly monthly reports—and that will be corrected if you will send me a supply of them. As I've said before many, many times, I'd rather deal directly with you than with some branch office which doesn't know me and which only starts up rumor again in a small town. That is a fear which I shall never overcome, and is possibly one of the reasons why I prefer to stay out of Los Angeles if possible."

Probation officer requested an investigation by the probation officer of Kern County and on June 16, 1942, the latter reported that, as requested, calls had been made at the Tipton home on Milvia Street in Bakersfield; that Mrs. Tipton's attitude was definitely hostile and she stated appellant was not there; it appearing to said officer that appellant was not living there but was using the address for collecting her mail. Probation office received a letter on June 9, 1942, from appellant from the Bakersfield address, in which she stated she was going to take her father to a doctor in Sacramento and if she had to stay there any length of time she would write "you further—and will make an effort to get down to see you anyway." This is the last communication received from appellant, although two communications were later sent to her requesting further reports. During the latter part of June, 1942, Mr. Swaffield called at the probation office and reported that certain investigations made by him in his office revealed some irregularities in the handling of his accounts by appellant.

Appellant at an interview after her apprehension on September 3, 1942, stated that her reason for failing to keep in touch with the probation officer was that during the previous year and a half she had made an entirely new life for herself under the name of Gale Payne, under which name she obtained her position at Furnace Creek Inn; that she handled money during the time of her employment there and that she was bonded in the sum of $2,000 the first year which was increased the last year; that on June 14, 1941, she was married in Las Vegas, Nevada, to Donald Colley, who is now in the United States Army, and that she kept this from the probation officer as she feared her husband would be advised of her past record; that there was nothing irregular in her deal-

ings in Mr. Swaffield's office, except that she worked there under the name of Gale Payne and did not tell him of her marriage because she understood he was opposed to employing married women. She also stated she did not go to Baltimore to care for her father, did not bring him to California, but that she left Death Valley on March 16, 1942, and went to San Francisco to see her husband since she had been informed he would probably be sent overseas and she wished to see him before he left; that she waited there for three days before she discovered his division had already sailed. By pre-arrangement, she met a Mrs. Lichtenberg, daughter of Colonel Poe of the United States Army, whose husband was a friend of appellant's husband. Mrs. Lichtenberg suggested that she and appellant go to New Orleans where Colonel Poe was stationed as he could get them work with the government; appellant did obtain a civil service position at the Point of Embarkation, New Orleans, where she remained until July 22, 1942, by which time Colonel Poe had been sent overseas and his wife and daughter wished to return to California. Appellant came to California with them and through her New Orleans references, obtained stenographic work at Fort McArthur, where she was working when apprehended. She was living with Mrs. Poe and her daughter, using the name of Gale Colley, and when interviewed by her probation officer after her apprehension, appellant stated she never was in Bakersfield with her father and used Mrs. Tipton's residence merely as a mailing address, as she could not afford to have mail coming to her addressed to Sandra Martin. She also insisted that she had done nothing wrong and feared no investigation of her conduct.

Since the court, when making the order revoking probation, stated he was not taking into consideration the Swaffield matter regarding alleged irregularities of appellant in the handling of certain accounts when employed by Mr. Swaffield, no further reference will be made thereto, although there does appear in the record herein a supplementary report of the probation officer respecting the same.

While it is doubtless true, as contended by appellant, that "the law does not forbid one to leave the State of California while on probation" under certain circumstances, and "does not forbid a person taking another name than one's own," the record herein discloses that appellant pursued a course of conduct calculated to deceive not only the probation

officer, but her employers, as well as the man she married and his friends, after she had been granted an extraordinary relief from suffering the penalty of her offenses because the court believed she would remold herself into a good citizen. (*People* v. *Fields,* 131 Cal.App. 56 [20 P.2d 988].)

"The matter of granting probation in the first place is within the sound discretion of the trial court. It has been referred to as 'an act of grace and clemency, which may be granted by the court to a seemingly deserving defendant, whereby he may escape the extreme rigors of the penalty imposed by law for the offense of which he stands convicted.' (*People* v. *Hainline,* 219 Cal. 532, 534 [28 P.2d 16].) In section 1203 of the Penal Code (1203.2 as amended) it is provided that the court is authorized to revoke an order for probation if there is reason to believe from the report of the probation officer or otherwise that the defendant has violated the terms of his probation. The discretion of the court to revoke an order of probation is 'very broad.' (*People* v. *Fields,* 131 Cal.App. 56 [20 P.2d 988].) No formal procedure is provided for presenting charges of violation of probation. The court may make an order revoking probation based upon facts presented in an informal charge from which the court has reason to believe that the defendant has violated his probation or is unfit to be at large. (*In re Young,* 121 Cal.App. 711 [10 P.2d 154].)" (*People* v. *Silverman,* 33 Cal.App.2d 1, 5 [92 P.2d 507].)

In the case of *In re Young, supra,* it is stated at page 714: "The continued enjoyment of probation may depend upon the effect which the prisoner's liberty may have upon the peace or morals of society. A breach of the terms of probation and the unfitness of the prisoner to enjoy his liberty are not required to be established beyond a reasonable doubt according to the rule which prevails in ordinary criminal proceedings. It is only necessary that the judge shall have reason to believe them to be true from the report of the probation officer, or otherwise. No particular source, manner or degree of proof is required by statute. It may not be presumed a judge will arbitrarily revoke probation without reason therefor. Pursuant to our statute, however, the judge or justice having jurisdiction of the cause may, in the exercise of sound discretion, based upon facts presented in an informal fashion, from which he has reason to believe the prisoner

has violated his probation or is unfit to be at large, revoke the order suspending sentence and commit him to jail.''

After carefully reviewing the record presented to this court, we are unable to say that the trial court abused its discretion in revoking the order admitting appellant to probation.

For the reasons stated, the order appealed from is affirmed.

Doran, J., concurred.

WHITE, J.—I concur. The authority of the court to revoke probation is not dependent upon the violation of the specific conditions imposed as terms of such probation. It is within the sound discretion of the court to revoke probation whenever the conduct of the probationer indicates that he has failed to reestablish himself as a worthy citizen of the state, or has demonstrated by his conduct that he is unfit to be at large, and that his continued freedom will impair, menace or jeopardize the peace or morals of society. (*People* v. *Hunter*, 42 Cal.App.2d 87, 91 [108 P.2d 472]; *In re Young, supra;* sec. 1203.2, Pen. Code.)

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1943. Curtis, J., voted for a hearing.