349 P.2d 622

**STATE of Arizona, Appellee,**

v.

**James D. DOUGLAS, Appellant.**

No. 1149.

Supreme Court of Arizona.

Feb. 17, 1960.

Rehearing Denied March 22, 1960.

W. Edward Morgan, Tucson, for appellant.

Wade Church, Atty. Gen., Franklin Gibson, Asst. Atty. Gen., Harry Ackerman, County Atty. of Pima County, and Pete

M. Rubi and Jack I. Podret, Deputy County Attys. of Pima County, Tucson, for appellee.

UDALL, Justice.

James D. Douglas (defendant-appellant), a Negro, was charged before a magistrate with the crime of murder (second degree), a felony. After a preliminary hearing the committing magistrate held him to answer for the crime of manslaughter. Thereafter the county attorney of Pima County filed an information in the superior court charging defendant with manslaughter, viz.: the unlawful killing of Alois Robert Katafrias on August 16, 1958. To this information the defendant—who at all times was represented by counsel—first entered a plea of not guilty. Later in open court he withdrew this plea and entered a plea of guilty to the charge of manslaughter.

Prior to sentencing, at defendant's request, a full hearing was had on his request for mitigation of punishment. Twenty-six witnesses, called by the defendant, were sworn and testified at such hearing, and a written report from Dr. Neumann, a psychiatrist, was submitted. The testimony of all of these witnesses was highly favorable to the defendant. The adult probation officer submitted his report, in which he stated that he was unable—under the circumstances—to recommend probation solely because, as the report stated, "he took the life of another human being." Through this hearing the trial court became thoroughly acquainted with the defendant's background, his standing in the community, and the esteem in which others held him. Following the proceedings, and with full awareness of all the circumstances, the court imposed sentence. In so doing, the court said, in effect, that to a considerable extent it had deferred to the favorable opinions of the character witnesses and the experts who had appeared on defendant's behalf. The court stated that, in the absence of such a strong showing, the sentence imposed would surely have been greater. However, it was the expressed opinion of the trial court that the matters presented in mitigation of punishment were not sufficient to outweigh the gravity of the offense nor such as to justify probation. The court then proceeded to enter a judgment of conviction and imposed a sentence upon defendant to serve not less than three nor more than five years in the State penitentiary. (The maximum statutory sentence for manslaughter is ten years, A. R.S. § 13-457.) A certificate of probable cause was then granted and defendant released upon bail. This appeal followed.

The notice of appeal is from the sentence imposed

"upon the grounds and for the reasons that said sentence is illegal, being violative of the State and Federal Constitutional provisions for due proc-

ess and equal protection of the laws; that said sentence is cruel and unjust; and for the further reason that the Court 'abused its discretion in assessing the punishment in the above-entitled case."

The single assignment of error reads:

"The court abused its discretion in imposing a prison sentence in the facts and circumstances of this case."

The supporting propositions of law advanced by defense counsel—without any citation of authority—are:

"1) Where a statute gives a Court the discretion to impose a jail sentence or to suspend the operation thereof, it is unlawful to impose a jail sentence where there is no basis other than the bare commitment of the criminal act; and where there is substantial evidence presented to the Court, it is unlawful sentence to sentence a defendant to jail for a term of three to five years for manslaughter where the substantial evidence shows the defendant:

"(a) Has, for 48 years of his life to the time of the incident involved, not committed any other crime;

"(b) Has been psychiatrically examined and found to be an emotionally stable and mentally well person;

"(c) Has shown his stability, trustworthiness and honesty by holding a responsible position with the same fundamental employer for a period of fifteen years or more;

"(d) Is a member of a minority group with those attendant pressures for anti-social conduct and has conducted himself as stated in the other suppositions;

"(e) Is a man of excellent reputation among both members of his own race and of others;

"(f) Has been married to the same woman and had ten children who he successfully raised;

"(g) Has shown himself to be an honestly practicing religious man and has, with the exception of one particular aberration, maintained his conduct consistent with his piety. Under such circumstances, a jail sentence for Manslaughter is illegal.

"2) Where there has been a hearing in mitigation of sentence, a jail sentence is unlawful which does not specify in detail the reasons for the imposition of sentence.

"3) A jail sentence without reason is an abuse of judicial discretion. A sentence imposed in violation of judicial discretion is in violation of that due process guaranteed by Amendment Fourteen of the United States Constitution: Due Process."

The pertinent parts of the statute governing criminal appeals, A.R.S. § 13–1713, states:

"An appeal may be taken by the defendant only from:

"1. A final judgment of conviction.

"2. * * *

"3. A sentence on the grounds that it is illegal or excessive."

It will be noted that the legislature has not expressly granted defendants the right of appeal from a ruling—such as we have here—denying a plea for suspension of sentence and probation. Obviously this appeal is not from subsection 1, as the judgment of conviction was entered upon defendant's plea of guilty; nor is this an appeal based upon the grounds that the sentence imposed (i. e., 3 to 5 years), is an *excessive* sentence (subsection 3). The Criminal Code (A.R.S. § 13–457) fixes the punishment for manslaughter at "not to exceed ten years", and we are not being asked to actually reduce the sentence. The closing paragraph of defendant's brief makes clear the relief specifically prayed for, viz.:

"We respectfully submit that this Court should remand this cause to the trial Court for a review of its sentencing in the light of the principles enunciated by this Court, or, in the alternative, to remand with instructions to the trial Court to order the Appellant re-sentenced, with imposition of sentence suspended and the Appellant placed upon probation till such time as the Court may deem advisable under the circumstances of the case."

Assuming, without deciding, that the word "illegal" in § 13–1713(3), supra, entitled the defendant to take this peculiar and novel appeal, the question then arises: is there any merit to the contentions made by defendant?

The power to suspend the imposition of sentence did not exist in the court at common law. Furthermore the suspension of sentence is not a matter of right under any circumstances or in any instance, but is purely a matter of discretion in the trial court, i. e., it is a matter of grace and not of right. Varela v. Merrill, 51 Ariz. 64, 74 P.2d 569.

The language of the particular statute, therefore, is very material as to the power conferred upon the court. Our statute upon the subject is A.R.S. § 13–1657, the pertinent part of which reads:

"A. If it appears that there are circumstances in mitigation of the punishment, or that the ends of justice will be subserved thereby, the court may, in its discretion, place the defendant upon probation in the manner following:

"1. The court may suspend the imposing of sentence and may direct that the suspension continue for such period of time, not exceeding the maximum term of sentence which may be imposed, and upon such terms and conditions as the court determines, * * *."

A careful reading of this provision discloses the Legislature has not required of the trial court that it spell out its reasons for either granting or denying probation. Probably this was because there are so many intangible and imponderable factors entering into such a decision. We, therefore, are unable to agree with defendant's second proposition of law, viz.:

"2) Where there has been a hearing in mitigation of sentence, a jail sentence is unlawful which does not specify in detail the reasons for the imposition of the sentence."

We note again that not a single reported case is cited in support thereof.

■ Nor can we agree that because other judges have suspended sentence and granted probation in cases where the prisoner at the bar of justice was apparently less worthy of mitigation of punishment than was the defendant in the instant case, that this amounts to a denial of the constitutional rights of due process or equal protection of the law. Cf. Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337.

■ Defendant's remaining proposition is to the effect that failure to grant probation in this case was such an abuse of discretion as to render the sentence "unlawful". On several occasions this court has discussed the meaning of "discretion" in its legal context. The essence of these holdings has been that "discretion" means a "*sound* discretion", and that an abuse of discretion occurs when the decision is characterized by capriciousness or arbitrariness or by a failure to conduct an adequate investigation into the facts necessary for an intelligent exercise thereof. In re Welisch, 18 Ariz. 517, 163 P. 264; State v. Bigelow, 76 Ariz. 13, 258 P.2d 409, 39 A.L.R.2d 979; Brown v. Beck, 64 Ariz. 299, 169 P.2d 855; Bowman v. Hall, 83 Ariz. 56, 316 P.2d 484. It is clear, upon the record in this case, that the trial court gave a full hearing to defendant's plea in mitigation of punishment and that its denial of probation and imposition of a jail sentence came only after sober reflection.

It must be conceded that the passing of sentence in a criminal case is one of the most difficult and trying tasks a court is called upon to perform. This for the reason the liberty (ofttimes the very life) of a human being, as well as his whole future, are at stake. Justice Henry Alfred McCardie aptly stated:

"Trying a man is easy, as easy as falling off a log, compared with decid-

188

ing what to do with him when he has been found guilty."

A conscientious judge will therefore (if needs be on his own motion) inquire into all of the facts and circumstances surrounding the alleged offense. See, State v. Fenton, 86 Ariz. 111, 341 P.2d 237; State v. Smith, 66 Ariz. 376, 189 P.2d 205; and State v. Bigelow, supra. This requirement was certainly fully met in the instant case. Defendant's complaint is not at the procedural aspects, but that the court reached the wrong conclusion in denying probation.

█ In regard to most crimes, our statutes provide for indeterminate sentences, with power in the trial court to set the sentence within the statutory limits or—in his discretion—to suspend its imposition and grant probation. The purpose of this system of sentencing is the individualization of punishment, i. e., making the punishment fit the offender, rather than the crime. Modern concepts of social justice require that some agency of government have this discretionary power to temper justice with mercy. Our laws place the power in the trial court. A heavy responsibility is thus entrusted to the trial judge. He is to pass a value judgment upon a human being for the society which he represents; he is to sit as the conscience of the community. In the performance of this duty, the trial judge is—to a certain extent—deprived of any set standards or legal guideposts. His judgment in this matter is virtually unreviewable. As we said in Varela v. Merrill, supra:

"* * * [T]he suspension of the sentence is expressly stated to be a matter within the discretion of the trial judge. There are no rules prescribed as to when this discretion shall be exercised, or as to what evidence is necessary to satisfy the trial judge that the case is a proper one for its exercise. Indeed, it would be almost impossible to present a case which would justify this court in finding that the trial court had abused its discretion in regard to whether sentence should be suspended or not. * * *" 51 Ariz. 64, 76, 74 P.2d 569, 574.

Sentencing is perhaps the only time in the process of the administration of criminal justice when the sentiments and emotions of the trial judge should properly come into play. Certainly this is not to say that a judge in this situation should allow himself to be swayed by his prejudices. More often than not the inclination of the judge is toward mercy. In this case, however, the trial court's disposition was not as lenient as the defendant had hoped. Perhaps some members of this Court, had we been

charged with the responsibility, would have granted probation. However, we cannot say that the trial court's failure so to do was "illegal".

Counsel for defendant advocates a scrupulously scientific approach to sentencing. It is urged that, by application of the rules of procedure and criteria borrowed from the behaviorial sciences, sentencing can be reduced to a precise art. We doubt the efficacy of this approach. Somewhere, if mercy is to enter into the picture, there must be a place for the human element in the final act of criminal justice. However, we do agree with counsel that there is room for improvement in the rationalization of standards of sentencing. In this regard we commend to the courts of this state the excellent work entitled "Guides for Sentencing" issued by the Advisory Council of Judges of the National Probation and Parole Association. The deprivation of life or liberty should never—even aside from any question of due process—be a snap judgment. Nor was it in the instant case.

The judgment and sentence of the trial court are affirmed.

STRUCKMEYER, C. J., and PHELPS, JOHNSON and BERNSTEIN, JJ., concur.